**In re Susan V. HAGAN, Debtor.**

**Susan V. HAGAN, Plaintiff,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Bankruptcy No. 8300827.**

United States Bankruptcy Court, D. Rhode Island.

June 4, 1984.

John Rao, Rhode Island Legal Services, Providence, R.I., for plaintiff.

Everett C. Sammartino, Asst. U.S. Atty., Dist. of R.I., Providence, R.I., for defendant.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the debtor's motion to adjudge the Secretary of Health and Human Services in contempt for alleged violation of the automatic stay provisions of 11 U.S.C. § 362. The debtor also seeks: an order enjoining the Social Security Administration (SSA) from collecting pre-petition overpayments of Supplemental Security Income (SSI) benefits by taking deductions against post-petition payments; an order requiring the return of withholdings which the debtor asserts were improperly deducted from her post-petition SSI benefits; and attorney's fees.

## FACTS [1]

Susan Hagan is an eligible recipient of SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* In February 1983, Ms. Hagan was notified that she had been overpaid $2,911.56 and that these overpayments would be recovered by withholding against her future SSI benefits. In response to this intended action, Hagan sought administrative relief,[2] including a request that recovery of the overpayment be waived. In July 1983, SSA notified Hagan that she was eligible to receive $63.76 in monthly SSI benefits beginning in August 1983. She was notified in November 1983 that the revised overpayment had been determined to be $3,077.72, that her request for waiver of recovery had been denied, and that her future SSI benefits would be withheld until the overpayment was recovered. The amount of the overpayment does not appear to be in dispute, and SSA does not suggest that overpayments were obtained through fraud.

On December 6, 1983, Hagan filed a Chapter 7 bankruptcy petition, and scheduled SSA as a creditor in the amount of $3,077.72. She was notified by SSA on December 12, 1983 that it intended to recover the overpayment by withholding $30 per month from her future SSI benefits beginning in February 1984. Thirty dollars were withheld from the debtor's SSI check for February 1984, and again for March 1984. At the hearing on the instant contempt motion, SSA agreed to discontinue withholding from the debtor's benefits during the pendency of this action.

SSA maintains that its proposed method of recovery of overpayments is proper, notwithstanding bankruptcy, on the ground that the subject debt-overpayments are nondischargeable. In support, the government offers the following arguments: 1) that SSA collection activities are exempt from operation of bankruptcy laws, pursuant to § 207 of the Social Security Act, 42 U.S.C. § 407 (as amended by Pub.L. No. 98–21, § 335(a)(2), 1983); or alternatively, (2) that the collection of past overpayments from present benefits is a "recoupment," and therefore not subject to bankruptcy laws.

With respect to SSA's first argument, section 207 of the Social Security Act, 42 U.S.C. § 407, dealing with SSI benefits, provides:

Assignment

(a) Inalienability of right to future payments

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) Inamendability of section by inference

No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

The cases clearly indicate that the statute was designed to protect SSI recipients, not the government. This has been the conclusion in a number of well reasoned decisions, *e.g., Neavear v. Schweiker (In re Neavear)*, 674 F.2d 1201 (7th Cir.1982); *French v. United States (In re French)*, 20 B.R. 155 (Bkrtcy.D.Or.1982); *Hawley v.*

---

1. The following opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 9014 and 7052.

2. Any appeal from a determination of overpayment or denial of request for waiver must be pursued through the agency's published administrative procedures (*see* 20 C.F.R. § 416.1400 *et seq.*), and can eventually result in judicial review in the federal district courts pursuant to 42 U.S.C. § 405(c)(8) and § 1383(c)(3). At this time no administrative action is pending between SSA and the debtor, as she does not contest the overpayment determination. The instant action in the Bankruptcy Court is not for the purpose of judicial review of SSA agency rulings, but solely for the purpose of establishing the debtor's rights under bankruptcy law.

*United States (In re Hawley)*, 23 B.R. 236 (Bkrtcy.E.D.Mich.1982); *Rowan v. Morgan (In re Rowan)*, 15 B.R. 834 (Bkrtcy.N.D. Ohio 1981). These courts have held that § 207 protects the recipient's benefits from creditor action, and that SSA, in instances such as the one at bar, must be viewed as a creditor against which § 207 offers protection. SSA contends, however, that because the above cited decisions were issued prior to the 1983 amendment to § 207, i.e. subsection (b), they are now inapplicable. This argument is specious. Nothing in subsection (b), as it affects subsection (a), can be read to provide SSA with a special exemption from discharge for SSI overpayments. We also reject the government's argument because there is nothing in § 207 or the legislative history which excludes SSA from the operation of the automatic stay.

The legislative history discloses that subsection (b) was added in 1983 after the enactment of the 1978 Bankruptcy Code because, "some bankruptcy courts have considered social security and SSI benefits listed by the debtor to be income for purposes of a Chapter XIII bankruptcy and have ordered SSA in several hundred cases to send all or part of a debtor's benefit check to the trustee in bankruptcy." H.R. Rep. No. 98–25 Pt. 1, 98th Cong. 1st Sess. 82–83 (1983), reprinted in 2 U.S.Code Cong. and Admin.News [May, 1983] 143, 301–02. *See also* H.R.Conf.Rep. No. 98–47, 98th Cong. 1st Sess. 153, reprinted in 2 U.S.Code Cong. and Admin.News [May, 1983] 143, 443. The intention of subsection (b) was to establish § 207 as a statutory spendthrift provision which would protect past and future benefits not only from action by credi-

tors, but by a trustee in bankruptcy as well. Its obvious purpose was to protect the recipient, not the government, and § 207 was in no way intended to confer on SSA some sort of "nondischargeable-creditor" status.[3]

By adding subsection (b), Congress was unsuccessfully[4] attempting to resolve a division among bankruptcy courts as to whether SSI recipients could qualify as Chapter 13 debtors, where SSI benefits were the source of funding for the plan. The amendment to § 207, on which SSA relies for support, does not alter the fact that the statute never did and does not now address itself to the issue of bankruptcy discharge. *See United States v. Carey (In re Carey)*, 36 B.R. 194 (Bkrtcy.D.Kan. 1983). We concur fully with the court's observation in *In re French, supra*, that the government's argument is an "improper attempt to fashion a shield into a sword to be used against the intended beneficiary of the law." 20 B.R. at 156.

■ Based upon the foregoing discussion, we conclude that Section 207 of the Social Security Act confers upon SSA no immunity from the operation of the automatic stay, 11 U.S.C. § 362, with respect to the recovery of SSI overpayments.

■ SSA's alternate argument is that the bankruptcy laws do not restrict the government's common law right to recoup SSI overpayments. The government relies on several cases which distinguish recoupment from setoff, in that debts subject to recoupment are not discharged in bankruptcy.[5] *Lee v. Secretary of Health &*

---

**3.** As observed in *In re Neavear, supra*, at 1205, n. 11, "not even the Internal Revenue Service has been accorded the favorable treatment in bankruptcy that the SSA now contends it was granted." Under the Bankruptcy Code, tax claims receive special priority (11 U.S.C. § 507(a)(6)) in marked contrast with the lack of any express provision regarding the payment of debts to SSA.

**4.** It is noted in debtor's "Supplemental Memorandum in Support of Motion for Contempt for Violation of Automatic Stay," at 3, n. 1, that:

Although not applicable to the present case, the dispute regarding Chapter 13 income de-

duction orders still persists despite the Congressional amendment. One bankruptcy court has recently ruled that the SSA's interpretation of 42 U.S.C. § 407, as amended, violated the equal protection clause. *In re Baxter* [34 B.R. 911,] 11 B.C.D. 191, CCH Bank L Rptr. § 69465 (E.D.Tenn.1983). The Court in *In re Baxter* held that social security recipients are eligible for Chapter XIII relief and issued an income deduction order to the SSA.

**5.** Recoupment allows the abatement of a claim by a debt stemming from the same transaction. *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). Setoff involves the reduc-

*Human Services (In re Lee),* No. 83–0138 (E.D.Pa. July 8, 1983), appeal pending, No. 83–1564 (3rd Cir.); *In re Maine,* 32 B.R. 452 (Bkrtcy.S.D.N.Y.1982); *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (M.D.Tenn.1981). In our view, these decisions do not support SSA's position, as they are either inapplicable to the facts before this Court (*Yonkers Hamilton Sanitarium, Inc., Waldschmidt* and *Maine* involve executory contracts), or reach conclusions which we feel are fundamentally incorrect (*Lee* ).

The cases cited by SSA involved executory contracts where some performance remained by both parties. The amount of recovery was therefore determined by taking into account the mutual benefits and obligations of the contract.[6] *See In re Maine, supra,* at 455. Hagan's right to SSI benefits, however, is not the equivalent of or akin to an executory contract between her and the government. Her eligibility for benefits for each month is determined on the basis of the recipient's (and eligible spouse's, if any) income, resources, and other relevant characteristics in such month. *See* 42 U.S.C. § 1382 establishing eligibility requirements for Supplemental Security Income.

In *In re Lee, supra,* the facts are similar but the principle of recoupment was, we believe, improperly applied. *In re Lee* involved SSA's right to withhold the debtor's future benefits to recover previous overpayments. The court observed that the right of recoupment derives from a single transaction, whereas setoff rights grow out of separate transactions. Without stating any basis or reason for its conclusion, however, the court then held that past and future payments were all part of the same ongoing transaction, and that the remedy of recoupment was, there-

fore, available. It appears to us that in *Lee,* as in the instant case, each payment (past or future) should be viewed as a separate transaction, since eligibility for benefits is independently made each month, without regard to the amount of previous disbursements. As has previously been observed by other courts, the purpose of the SSI program is not to provide a means of assuring future financial security, but only to provide income when it is actually needed. *See Singer v. Secretary of Health & Human Services,* 566 F.Supp. 204 (S.D.N.Y.1983), and *Yulling v. Califano,* 474 F.Supp. 601 (S.D.N.Y.1979). The standard of need of each recipient and the amount of aid to be paid are computed *each month* (*see* 42 U.S.C. § 1382(c)(1)), and it is implicit that the aid provided is considered to be supplemental to that month's income needs, not an "advance" to secure the recipient's financial level in the months to follow. Thus, on December 6, 1983, when Hagan filed her petition in bankruptcy, she was not entitled to any benefits in January, as she had not qualified for aid in that month under SSI eligibility requirements. Pre-petition SSI overpayments disbursed between 1981 and 1983 may not, therefore, be construed as part of an ongoing post-petition transaction, because at the time said payments were made there was no assurance, contractual or otherwise, of Hagan's eligibility for future aid. *See In re Rowan, supra,* at 840 (the court applied a similar analysis and construed the receipt of monthly Social Security benefits as separate transactions conditioned upon the recipient's qualification each month). The overpayments that SSA now seeks to collect, constitute, in our opinion, separate claims against the debtor which arose prior to the commencement of the instant bank-

---

tion or cancellation of a debt from one transaction against a claim arising from a separate transaction. *See* 4 Collier on Bankruptcy ¶ 553.-03 at 553–11 (15th ed. 1984).

**6.** For example, in *Waldschmidt v. CBS, Inc., supra,* pre-petition advances for royalties were given by CBS to a debtor who was a musician. When royalties were earned on the sale of records, CBS deducted the full amount of ad-

vances it had previously paid to the debtor and, there being no surplus, did not pay any royalties to him. Over the trustee's objection to what he argued was an impermissible setoff, the court allowed the deduction as a recoupment, finding that adjustments of funds advanced against royalties earned was a proper method for determining recovery on the executory contract.

ruptcy proceeding. As such, the provisions of 11 U.S.C. § 362(a)(6) are fully applicable:

(a) ... a petition filed ... operates as a stay, applicable to all entities, of—

....

(6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title.

In addition to case law, SSA contends that its asserted right of recoupment is supported by the regulation governing SSI overpayments, § 1631(b)(1), which provides in pertinent part:

(b) Overpayments and underpayments; adjustment, recovery, or payment of amounts by Secretary

(1) Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall ... be made by appropriate adjustments in future payments to such individual or by recovery from or payment to such individual....

SSA maintains that under § 1631, SSI payments should be regarded as part of a continuing transaction. This characterization is neither expressed nor implied in the language of § 1631, nor, as we have previously indicated, does it accurately reflect the relationship between SSA and the recipient. The administrative guidelines of § 1631 merely set forth SSA's internal procedures by which adjustments to payments are made. Accordingly, we conclude that liability incurred by the debtor more than two years ago may not be regarded as a part of a single, ongoing transaction, involving her present and future eligibility to receive SSI benefits (in this instance, $63.76 per month). *See In re French, supra; In re Rowan, supra.* For these reasons we must disagree with the theory of recoupment espoused by the court in *In re Lee, supra.*

SSA's argument is substantially an attempt to legitimatize through the vehicle of "recoupment", an improper setoff. A similar though not identical tactic was employed unsuccessfully by the Internal Revenue Service (IRS) in *In re Norton,* 32 B.R. 698 (E.D.Pa.1982), *aff'd in part, rev'd in part, sub nom. United States v. Norton,* 717 F.2d 767 (3rd Cir.1983). In that case, the debtors brought an action in the bankruptcy court for contempt against IRS for violation of the automatic stay. IRS did not specifically argue that the funds had been "recouped", but contended that by withholding a portion of the debtors' tax refund due for the 1980 tax year to recover a deficiency owed for the 1978 tax year, it had not *exercised* setoff rights, but merely "frozen" the debtors' account so as to preserve its setoff rights. Like SSA, IRS relied on its agency administrative guidelines (26 I.R.C. § 6402(a) (Supp.1983)) which provide that a refund may be credited against a delinquent liability. IRS urged that retention of the debtors' tax refund not be considered as setoff, because the debtors' account had not actually been credited—an argument based on the proposition that the Bankruptcy Code implicitly distinguishes the *right* of setoff from the *exercise* of the right.[7] Since the account was not credited, IRS contended that it had not in fact offset the funds, but merely preserved the right to setoff. The Court of Appeals for the Third Circuit found this hair-splitting too subtle and upheld the bankruptcy court's finding that, notwithstanding IRS regulations authorizing withholding, the post-bankruptcy setoff of a tax refund against a pre-petition tax delinquency was a violation of the automatic stay. *United States v. Norton,* 717 F.2d at 772. The *Norton* result is even more compelling here, because although federal tax claims do receive priority under the Code (§ 507), no similar status is afforded to SSA claims.

SSA's argument that its claims for overpayments are not dischargeable in bankruptcy is unsupported. The Code sections

---

**7.** Although the right of setoff is preserved in the Bankruptcy Code, the exercise of that right is subject to restrictions imposed by the automatic stay. *See* 11 U.S.C. § 553(a), and 11 U.S.C. § 362(a)(7).

regarding the dischargeability of debts owing to the government, 523(a)(1), (7), and (8), are specific and limited to certain non-stale taxes, fines and penalties, and certain student loans. *See In re French, supra,* at 157. Debts owed to SSA on account of overpayments are not included in section 523 of the Bankruptcy Code, and we find no authority for the contention that section 207 or 1631 of the Social Security Act exempts a debt to SSA from discharge. According to the legislative history, all non-dischargeable debts were intended to be included in § 523 of the Bankruptcy Code, and dischargeability was no longer to be determined by reference to the various titles of the United States Code. *See In re Rowan, supra,* at 840, 841; 124 Cong. Rec.S. 17,425 (daily ed. Oct. 6, 1978); 124 Cong.Rec.H. 11,108 (daily ed. Sept. 28, 1978).

The above considerations are strong indicators that Congress did not intend the government's ability to recover SSI benefits under section 1631 of the Social Security Act to be exempt from the discharge provisions of the Bankruptcy Code. Moreover, in light of the special protection afforded SSI recipients through § 207 of the Social Security Act, it would be entirely inconsistent with Congress's expressed aim to read into specific legislation, by inference, a meaning which would reverse the result obviously intended by the statute, i.e., the protection of SSI benefits from creditor action, even if that creditor is the government.

Accordingly, we conclude that SSA's retention of the debtor's post-petition benefits constituted a setoff in violation of the automatic stay, 11 U.S.C. § 362, and that sections 1631 and 207 of the Social Security Act do not except from or prevent the discharge of the debt-overpayment in question.

Withholding of the debtor's future SSI benefits in recovery of past overpayments is enjoined, and SSA is ordered to pay to the debtor the withheld post-petition payments in question.

The debtor's request for the imposition of sanctions against the Secretary for civil contempt is denied, because the much litigated nature of these issues had left open to question whether the retention of funds was per se a violation of the automatic stay. SSA's voluntary discontinuance of withholding during the pendency of this action indicates prudent judgment on the contempt issue.

The debtor also requests attorney's fees. On this issue, we have found no definitive or conclusive statutory authority to indicate whether, under the circumstances, such an award is appropriate. Since neither party addressed the matter of attorney's fees in memoranda, it is ordered that supplemental briefs be submitted within fifteen days from the date of this decision. A determination on the issue of fees will be reserved until the Court has had the benefit of reviewing counsel's arguments.

Enter judgment accordingly.