LOGAN, Circuit Judge.
 

 This appeal involves a dispute between the parties to an oil division order. The question presented is whether a creditor can recoup overpayments made before the debtor’s filing for bankruptcy by withholding money owed for purchases that the creditor made from the debtor after bankruptcy. The bankruptcy court and the district court refused to allow the creditor to recoup overpayments under these circumstances. We have jurisdiction of this matter pursuant to 28 U.S.C. § 1291.
 

 B & L Oil Co., the debtor, executed an oil division order in favor of plaintiff-appellant Ashland Petroleum Company. Pursuant to this order, Ashland obtained the right to purchase unspecified amounts of crude oil that B & L produced. On August 2, 1982, and August 16,1982, Ashland overpaid B & L for oil produced and delivered in June of 1982 by $90,721.30. On September 7, 1982, B & L filed for Chapter 11 bankruptcy. After B & L’s bankruptcy petition, Ashland withheld $81,569.05 from payments owed to B & L for subsequent oil deliveries in order to recover the amount of its pre-petition overpayment.
 

 Ashland brought an action in the bankruptcy court, asking for a declaration that it had properly “recouped” its overpayment and that it would be entitled to recoup from future purchases the remaining amount it had overpaid. The bankruptcy court held that recoupment was improper because the debts did not arise from the “same transaction.” The district court affirmed that decision.
 

 In this appeal, Ashland contends that the district court erred in finding that a division order constitutes a series of separate contracts and that it construed the “same transaction” requirement for recoupment
 
 *157
 
 too narrowly. We conclude that recoupment is proper in this case.
 

 Recoupment originated as an equitable rule of joinder. It allowed adjudication in one suit of two claims that otherwise had to be brought separately under the common-law forms of action. Under recoupment, a defendant could meet a plaintiffs claim with a countervailing claim that arose “out of the same transaction.”
 
 See
 
 J. Moore, 3
 
 Moore’s Federal Practice
 
 If 13.02, at 13-13 n. 1 (2d ed. 1985); 20
 
 Am.Jur.2d,
 
 Counterclaim, Recoupment, and Setoff, §§ 16-18 (1965).
 

 Modern rules of pleading have diminished the importance of the common-law distinctions surrounding recoupment and its companion, setoff.
 
 Id.; see
 
 Fed.R. Civ.P. 13. But in bankruptcy, these distinctions remain important. In bankruptcy, both recoupment and setoff are sometimes invoked as exceptions to the rule that all unsecured creditors of a bankrupt stand on equal footing for satisfaction. Recoupment or setoff sometimes allows particular creditors preference over others.
 
 See Lee v. Schweiker,
 
 739 F.2d 870, 875 (3d Cir. 1984); 4
 
 Collier on Bankruptcy,
 
 11 553.03 (15th ed. 1981).
 

 Setoff is allowed in only very narrow circumstances in bankruptcy.
 
 See
 
 11 U.S.C. § 553; 4
 
 Collier, supra,
 
 at 11 553.03. But a creditor properly invoking the re-coupment doctrine can receive preferred treatment even though setoff would not be permitted.
 
 Id.
 
 A stated justification for this is that when the creditor’s claim “arises from the same transaction as the debtor’s claim, it is essentially a defense to the debtor’s claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.”
 
 Lee,
 
 739 F.2d at 875.
 

 A typical case applying the recoupment doctrine in bankruptcy permitted a claim for damages for alleged breach of a construction contract to reduce the balance due under the contract.
 
 In Re Clowards, Inc.,
 
 42 B.R. 627 (Bankr.D.Idaho 1984). Similarly, when a recording company paid advance royalties to a musician, it was allowed to recoup the advances from post-bankruptcy record sales, rather than being required to claim as an unsecured creditor for the outstanding overpayment total at the time of the bankruptcy filing.
 
 Waldschmidt v. CBS, Inc.,
 
 14 B.R. 309, 314 (M.D.Tenn.1981). Recoupment has been applied when progress payments on construction or repair contracts were made in excess of the value of the work performed before bankruptcy and performance continued after bankruptcy.
 
 In re Midwest Service and Supply Co.,
 
 44 B.R. 262, 265 (D.Utah 1983). The recoupment doctrine also was applied to allow the government to recover Medicare over-payments from post-bankruptcy reimbursements to a hospital that continued to operate after filing a Chapter 11 petition.
 
 In re Yonkers Hamilton Sanitarium, Inc.,
 
 22 B.R. 427, 433 (Bankr.S.D.N.Y.1982),
 
 aff'd,
 
 34 B.R. 385 (S.D.N.Y.1983). In that case, as in most of the other situations in which the recoupment doctrine was applied, the contract at issue expressly permitted the withholding of overpayments from future payments.
 
 See Lee,
 
 739 F.2d at 875 (compiling cases).
 

 On the other hand, recoupment has been held inapplicable to claims of the Social Security Administration for pre-bankruptcy overpayments made to a social security recipient.
 
 Lee v. Schweiker,
 
 739 F.2d 870 (3d Cir.1984);
 
 In re Hagan,
 
 41 B.R. 122 (Bankr.D.R.I.1984). In distinguishing the cases in which recoupment was allowed,
 
 Lee
 
 emphasized that most recoupment cases involved single contracts that provided for advance payments based on estimates of what ultimately would be owed, subject to later correction, and that the analysis in those cases was based on the treatment of executory contracts in bankruptcy. When an executory contract is involved, courts have reasoned that a debtor who assumes the favorable aspects of the contract (post-petition performance) also must take the unfavorable aspects of the same contract (obligation to repay pre-petition overpayments).
 
 Lee,
 
 739 F.2d at 876.
 
 *158
 
 Both
 
 Lee
 
 and
 
 Hagan
 
 viewed social security payments as separate transactions independently made each month based on the recipient’s eligibility at the time.
 
 Id.; Hagan,
 
 41 B.R. at 126.
 

 Reasoning from the cases’ emphasis that claims arising from a single contract generally qualify for recoupment, Ashland asserts that the oil division order is a contract and all purchases under it should be treated as arising from the “same transaction.” The division order gives Ashland the right to buy “all or any part” of the lease production and provides that the order remains in effect until one side gives thirty days written notice to the other; the order requires Ashland to pay a posted or quoted price that Ashland establishes for all similar oil in the field or area in which the lease is located. Ashland relies on non-bankruptcy cases in which state courts characterized such an oil division order as creating “a contract” governing the relationship between the parties.
 
 See, e.g., Maddox v. Gulf Oil Corp.,
 
 222 Kan. 733, 567 P.2d 1326, 1328 (1977),
 
 cert. denied,
 
 434 U.S. 1065, 98 S.Ct. 1242, 55 L.Ed.2d 767 (1978);
 
 Wagner v. Sunray Mid-Continent Oil Co.,
 
 182 Kan. 81, 318 P.2d 1039, 1047 (1957);
 
 Chicago Corp. v. Wall,
 
 156 Tex. 217, 293 S.W.2d 844, 846 (1956).
 

 In opposition, B & L points out that Ashland is not required to purchase any oil whatsoever, and that Ashland’s payment obligation is determined independently for each delivery, which must come from new production from the wells. It relies on
 
 Houston Lighting & Power Co. v. Liberty Pipe Line Co.,
 
 71 S.W.2d 393 (Tex.Civ.App. 1934), a nonbankruptcy case, which held that each separate delivery and acceptance of oil under a division order is a separate transaction.
 
 Id.
 
 at 398;
 
 see also
 
 Edwards,
 
 A Suggested Analysis for Gas Division Orders,
 
 19 Public Law & Res.L.Dig. 246, 252-53 (1982); Ethridge,
 
 Oil and Gas Division Orders,
 
 19 Miss.L.J. 127, 136 (1948).
 

 We have no difficulty holding that the oil division order is a single contract. It binds B & L to permit Ashland to take all or any part of the oil from the lease until B & L terminates the order by giving thirty days written notice. Ashland may be bound to take reasonable amounts of oil under the contract,
 
 see
 
 U.C.C. § 2-306(1); J. White & R. Summers,
 
 Uniform Commercial Code
 
 122 (2d ed. 1980), and, even if Ashland is not bound to take any particular amount, if it does take oil it is bound to pay a standard price and is subject to other contractual obligations. But this does not resolve the question of whether the month-to-month purchases of oil arise out of the same transaction for purposes of applying the recoupment doctrine in a bankruptcy context.
 

 A fundamental tenet of bankruptcy law is that a petition for bankruptcy operates as a “cleavage” in time. Once a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions.
 
 See
 
 4
 
 Collier,
 
 ¶ 553.-15, at 553-69 to -70. This is seen in bankruptcy restrictions on setoffs. A bank, for example, cannot set off a post-petition deposit against a depositor’s pre-petition debt.
 
 See First National Bank v. Davis,
 
 317 F.2d 770, 771 (5th Cir.1963); see
 
 also In re Braniff Airways, Inc.,
 
 42 B.R. 443, 448-49 (Bankr.N.D.Tex.1984); 4
 
 Collier,
 
 11553.15, at 553-69 to -70. Any recoupment exception to this general principle perhaps should be narrowly construed.
 

 The overpayments and the post-bankruptcy purchases of oil involved here are not as closely intertwined as the events in a situation in which a building owner resists paying the contract price because of a bankrupt contractor’s deficient work. Further, Ashland’s overpayment is not “essentially a defense” to B & L’s current claims for payment on post-bankruptcy deliveries; the obligations are easily separable and independently determinable.
 

 Nevertheless, the instant case is analogous to other bankruptcy cases in which recoupment has been allowed. The over-payments under the division order are much like advance royalties to a writer or
 
 *159
 
 musician. They are similar to the Medicare overpayments to a hospital, which a court allowed to be “recouped” against payments owed the hospital for patients it treated after filing Chapter 11 bankruptcy proceedings.
 
 See In re Yonkers Hamilton Sanitarium, Inc.,
 
 22 B.R. at 433. Although there the contracts expressly provided for repayment of advances or overpayments, application of an equitable doctrine should not depend on whether the parties expressly anticipated the problem.
 

 The courts have held that the debtor-in-possession or trustee may not accept the benefits of an executory contract without its burdens.
 
 See id.
 
 at 435;
 
 In re Maine,
 
 32 B.R. 452 (Bankr.W.D.N.Y.1983). Here the debtor-in-possession continued after bankruptcy to make sales to Ashland at the prices and subject to the other terms of the division order. Why should it not take the unfavorable aspects of the order as well— the obligation to repay earlier over-payments Ashland made? The general principle is that a petition for bankruptcy operates as a “cleavage” in time; but the recoupment doctrine has traditionally operated as an exception to the rule that applies to other debts.
 

 Further, bankruptcy courts apply recoupment as an equitable doctrine. Here we face a question of unjust enrichment. The situation before us is not one in which the creditor seeking relief consciously made a loan, extended credit, or made payments required by a contract, as did the bankrupt’s ordinary creditors. Ashland paid the sums to B & L by mistake. Although common sharing may be required in some mistake cases by the bankruptcy laws’ cleavage rules, allowing B & L’s other creditors to share in this money would give them a windfall, a classic case of unjust enrichment.
 

 For the above reasons, we find the re-coupment doctrine properly applies in this case.
 

 REVERSED AND REMANDED.