**ELECTRONIC METAL PRODUCTS, INC., a/k/a Advanced Machining Company, Plaintiff–Appellant,**

v.

**HONEYWELL, INC., a Delaware corporation, and Honeywell Bull, Inc., a Delaware corporation, Defendants–Appellees.**

No. 88–B–1060.

United States District Court, D. Colorado.

Jan. 31, 1989.

Ceri A.F. Churchill, Ronald G. Rossi, Paul S. Sanzo, Paul T. Maricle, Rossi & Stone, Denver, Colo., for plaintiff-appellant.

Jonathan C.S. Cox, Vicki M. Buchanan, Gerald Padmore, Cox & Padmore, P.C., Denver, Colo., for defendants-appellees.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This is an appeal from the United States Bankruptcy Court for the District of Colorado (the Bankruptcy Court). This court has jurisdiction pursuant to 28 U.S.C. § 1291 and Bankruptcy Rule 8001 allowing appeals as of right from a final judgment of a bankruptcy court. The Bankruptcy Court's judgment is affirmed in part, reversed in part, and the cause is remanded with directions. Oral argument was heard on January 30, 1989.

The following material facts are undisputed and review is therefore upon the issues of law presented.

In 1985, Honeywell, Inc. (Honeywell) filed a lawsuit against Electronic Metal Products, Inc. (EMP) in the United States District Court for the District of Colorado, based on breach of contract. Under a settlement agreement and mutual release, EMP paid Honeywell $100,000.00 in cash and gave Honeywell a $50,000.00 credit to be applied "at Honeywell's sole discretion to any purchases made by Honeywell from EMP" for a two-year period. In return, Honeywell dismissed its lawsuit against EMP. The settlement agreement specified that the credit was non-assignable and non-transferable.

In December 1986, Honeywell transferred its credit to its Large Computer Division, a distinct entity known as Honeywell Information Systems, Inc. On March 13, 1987, Honeywell notified EMP that its subsidiary would be using the credit. On March 26, 1987, Honeywell Information Systems, Inc. changed its name to Honeywell Bull.

On May 6, 1987, EMP filed a Chapter 11 bankruptcy. Thus, the beginning of the 90–day preference period was February 5, 1987.

Pursuant to 51 invoices dating from February 9, 1987 to June 30, 1987, EMP shipped goods on account to Honeywell Bull. On May 4 and July 24, 1987 EMP was notified in writing that Honeywell Bull was withholding payment for the goods, thereby claiming application of the amounts it owed EMP against Honeywell's credit. The letters designated certain invoices to which Honeywell Bull was applying the credit. Pre-petition invoices totaling $25,535.91 and post-petition invoices in the amount of $24,464.09 were applied against the credit. Neither Honeywell nor Honeywell Bull obtained relief from the automatic stay with respect to the post-petition setoffs.

EMP instituted this adversary proceeding against Honeywell and Honeywell Bull in the Bankruptcy Court to recover payments for the goods EMP shipped to Honeywell Bull. Honeywell Bull refused payment based upon a claim of recoupment.

A hearing was held before the Bankruptcy Court on June 28, 1988. The Bankruptcy Court concluded that the doctrine of recoupment applied and entered judgment for Honeywell and Honeywell Bull. It is from this judgment that EMP appeals.

EMP first contends that the Bankruptcy Court erred in applying § 4–2–210(2), C.R.S. to the transfer of the credit from Honeywell to Honeywell Bull. I disagree.

Under § 4–2–210(2) "... a *right* arising out of the assignor's due performance of his entire *obligation* can be assigned *despite agreement otherwise.*" (emphasis added). Because Honeywell performed its entire obligation and dismissed the lawsuit pursuant to the settlement agreement, it was free to transfer its credit rights to Honeywell Bull, despite language in the settlement agreement to the contrary. Therefore, the Bankruptcy Court correctly concluded that Honeywell's assignment of its credit rights under the contract to Honeywell Bull was valid. Hence, because

the assignment from one distinct entity to another was valid and the goods were ordered on account by Honeywell Bull, judgment was correctly entered in favor of Honeywell.

■ EMP further contends that the Bankruptcy Court incorrectly expanded *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986), by finding that the applications against the credit made by Honeywell Bull were recoupments. I agree.

"Recoupment originated as an equitable rule of joinder." *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986). It allowed a defendant to show that because of matters "arising out of the same transaction" as the debtor's claim he is not liable fully to the debtor. *Id.* Recoupment is essentially a defense to the debtor's claim against the creditor. *Id.* In bankruptcy, the doctrine of recoupment is invoked as an exception to the rule that no creditor of a bankrupt shall receive preferential treatment. *Id.*

In *B & L Oil*, the debtor executed an oil and gas division order with a petroleum company allowing the company to purchase unspecified amounts of crude oil produced by the debtor. The division order required the petroleum company to pay a quoted price for "all or any part" of the oil B & L produced, and 30 days notice by either party was required to terminate the order. The petroleum company mistakenly overpaid the debtor and after the debtor filed Chapter 11 bankruptcy, the company recouped its overpayment by withholding payments owed to the debtor for post-petition oil deliveries. The Tenth Circuit held that the oil division's order was a single contract. *In re B & L Oil Co.*, 782 F.2d at 158. In so holding, the Court cautioned that once a bankruptcy petition is filed, pre-petition debts may not be satisfied through post-petition transactions; and "[a]ny recoupment exception to this general principle perhaps should be narrowly construed." *Id.* The Court further stated that:

"Nevertheless, the instant case is analogous to other bankruptcy cases in which recoupment has been allowed. The overpayments under the division order are much like advance royalties to a writer or musician. They are similar to the Medicare overpayments to a hospital, which a court allowed to be 'recouped' against payments owed the hospital...."

*Id.* at p. 158–159.

*B & L Oil* is distinguishable from the present situation. Here, the settlement agreement established that EMP was to give Honeywell a $50,000.00 credit. No goods or terms were specified other than the two-year time limitation, and neither party entered into a contract governing an on-going relationship. Thus, EMP's subsequent sale of goods to Honeywell Bull were separate transactions.

■ Moreover, Honeywell's receipt of EMP's $50,000.00 credit is not analogous to Honeywell making an advanced payment or an overpayment of $50,000.00 to EMP. If Honeywell did not use the credit within two years, the credit would have expired under the terms of the settlement agreement and EMP would not have been obligated to repay Honeywell $50,000.00. Under the circumstances here, to allow Honeywell to recoup the $50,000.00 credit is to give a preference to Honeywell over EMP's other creditors. As the *B & L Oil* Court stressed, recoupment should be narrowly construed as an exception to the general rule against preferring one creditor over another. *In re B & L Oil Co.*, 782 F.2d at 158.

Accordingly, the Bankruptcy Court erred in its application of *B & L Oil* and the doctrine of recoupment to this case.

It is therefore

ORDERED that the Bankruptcy Court's judgment is affirmed as to the validity of the credit's assignment and, thus, as to its judgment in favor of Honeywell.

It is FURTHER ORDERED that the judgment in favor of Honeywell Bull is reversed and this case is remanded to the Bankruptcy Court for further proceedings not inconsistent with the views expressed in this opinion.