**In re R & C PETROLEUM, INC., Debtor.**

No. 94–60443.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Feb. 1, 2000.

Jason R. Searcy, Jason R. Searcy, P.C., Longview, TX, for Leonard Pipkin as liquidating trustee of The Creditors Trust.

Robert W. Johnson, Blanchard, Walker, O'Quin & Roberts, P.C., Shreveport, LA., for Bayou South Gas Gathering Co., L.C.

## *OPINION*

DONALD R. SHARP, Chief Judge.

NOW before the Court for consideration is the Joint Motion To Finally Determine Administrative Claim of Bayou Gas Gathering Company, L.C. ("Motion") filed by Bayou South Gas Gathering Company, L.C. ("Bayou") and Leonard Pipkin, as Trustee of the Creditors Trust ("Liquidating Trustee") under the plan of reorganization of R & C Petroleum, Inc. ("R & C"), the Debtor in this case. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed. R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### *FACTUAL AND PROCEDURAL BACKGROUND*

This case was initiated by the filing of an involuntary Chapter 7 petition against R & C Petroleum Inc. ("Debtor"). Thereafter, R & C filed with the Court its Consent to Order for Relief in Involuntary Case and Expedited Motion to Convert Case to Chapter 11. On May 6, 1994, this Court, the Honorable C. Houston Abel presiding, signed an Order for Relief in Involuntary Case and Converting Case to Chapter 11 [1]. From entry of the order until the confirmation of R & C's plan of reorganization on June 22, 1995, R & C operated as debtor in possession. In addition, during this time as well as pre-petition, R & C was party to an executory contract, a Gas Gathering Agreement dated November 1, 1992, and amended as of November 1, 1993, by and between R & C and Bayou. The Gas Gathering Agreement gives rise to Bayou's claims in this proceeding. Under the Gas Gathering Agreement, Bayou has an unopposed pre-petition unsecured claim against the estate in the amount of $103,893.60. Bayou also filed a Motion for Allowance and Payment of Administrative Expense Claim and the parties presented Judge Abel an Agreed Order Allowing Administrative Expense Claim of Bayou South Gas Gathering Company, L.C. and Provisions Relating Thereto (the "Agreed Order"), which was entered in this case. The Agreed Order allows an administrative claim under 11 U.S.C. § 503(b)(1)(A) (the "Administrative Claim") in the amount of $95,538.40 in favor of Bayou, but limits Bayou's entitlement to receive payment on account of the Administrative Claim making it "subject to any right of set off that exists in favor R & C arising from any gas imbalance credit that may be due R & C under a certain Gas Gathering Agreement dated November 1, 1992, and amended as of November 1, 1993 ...". The existence and amount of such setoff was to be determined by this Court if the parties were unable to agree; they were not and this is the controversy now before the Court.

The Gas Gathering Agreement provides that Bayou will accept gas from specific R & C wells into Bayou's gas pipeline facilities and that Bayou will transport such gas to certain destination points for delivery to R & C's customers. For such service, the Gas Gathering Agreement provides that R & C will pay a monthly gathering charge to Bayou based on the volume of R & C's gas transported during that month through Bayou's facilities. The parties stipulated that the Gas Gathering Agreement was effective from November 1, 1992 until June 30, 1995, when it was terminated by R & C's rejection under 11 U.S.C. § 365(a).[2]

---

**1.** This case became the responsibility of this Court upon the untimely death of Judge Abel. The Court has thoroughly reviewed the file in this matter and the records of the hearings conducted by Judge Abel.

**2.** Under *United States Abatement Corp. v. Mobil Exploration and Producing (In re United States Abatement Corp.),* 79 F.3d 393, 400 (5th Cir.1996), this Court is bound by the parties' stipulations.

During the operation of the Gas Gathering Agreement, gas imbalances arose from time to time when R & C delivered more gas into the gathering system than its customers received from the gathering system (resulting in an imbalance in favor of R & C) or when R & C's customers received more gas from the system than R & C provided into the gathering system (thus resulting in an imbalance in favor of Bayou). The parties have stipulated to the amounts of the monthly gas imbalances which occurred, as follows [+ indicates volumes owing to Bayou, and ( ) amounts indicate volumes owing to R & C]:

| Periods: | Volumes (MMBtu): |
|---|---|
| Nov – 92 | 0 |
| Dec – 92 | 0 |
| Jan – 93 | (3,265) |
| Feb – 93 | + 8,087 |
| Mar – 93 | 0 |
| Apr – 93 | (15,890) |
| May – 93 | 0 |
| Jun – 93 | (6,645) |
| Jul – 93 | 8F 17,661 |
| Aug – 93 | + 20,705 |
| Sep – 93 | + 24,743 |
| Oct – 93 | (4,236) |
| Nov – 93 | (28,756) |
| Dec – 93 | + 6,676 |
| Jan – 94 | (8,797) |
| Feb – 94 | + 4,557 |
| Mar – 94 | + 7,332 |
| Apr – 94 | 0 |
| May – 94 | 0 |
| Jun – 94 | 0 |
| Jul – 94 | (17,823) |
| Aug – 94 | + 992 |
| Sep – 94 | + 2,307 |
| Oct – 94 | (18,538) |
| Nov – 94 | (8,764) |
| Dec – 94 | (29,828) |
| Jan – 95 | + 7,431 |
| Feb – 95 | + 9,352 |
| Mar – 95 | + 3,780 |
| Apr – 95 | (7,462) |

| Periods: | Volumes (MMBtu): |
|---|---|
| May – 95 | + 344 |
| Jun – 95 | + 822 |

The Gas Gathering Agreement specifies that the parties would cooperate to resolve imbalances within ninety days of the Gas Gathering Agreement's termination.

Bayou and the Liquidating Trustee agree that the value of gas for all periods relevant to this dispute is $1.54/MMBtu.

The parties further stipulate that from May 6, 1994, the date of the order for relief, through December 31, 1994, Bayou provided gas gathering services pursuant to the Gas Gathering Agreement without fail for which R & C failed to pay the contractually-stipulated charges.[3]

The matter came before the Court pursuant to regular setting and was taken under advisement.

## THE PARTIES' ARGUMENT

Given that Bayou and the Liquidating Trustee have agreed to all relevant facts on which the dispute is based, the issue before this Court is the quantification of Bayou's administrative expense claim after reducing the claim by setoff or recoupment. Naturally, Bayou and the Liquidating Trustee have different interpretations of the amount of the Administrative Claim that shall be deemed payable to Bayou with Bayou advocating preserving its administrative expense claim (such claims being paid in full rather than pro-rata) but reducing its pre-petition claim, while the Liquidating Trustee seeks to reduce the administrative claim.[4] Using the stipulated volume debits and credits and the stipulated gas value of $1.54/MMBtu, the Court computes that the R & C Imbalance Debit for the pre-petition period was $34,-

---

3. From January 1, 1995 through the termination of the Gas Gathering Agreement, Bayou's assignee of rights under the contract, Cornerstone, provided such gas gathering services. The post-January, 1995 services and the payment for such services were not at issue in the Joint Motion, although the parties include amounts for January and February, 1995 in their stipulated Administrative Claim amount of $95,538.40.

4. The parties do not seek this Court's quantification of the pre-petition claim. It is implicated indirectly because administrative expense claims are paid in full and pre-petition claims receive pro rata treatment such that the greater the pool of administrative claims, the lesser the estate's assets available to be divided among pre-petition claims.

144.88 and that the R & C Imbalance Credit for the post-petition period was $88,375.98.[5]

Bayou contends that the Court should net the $88,375 post-petition R & C Imbalance Credit against the $34,144.88 prepetition R & C Imbalance Debit which results in a net imbalance credit of $54,231.10. Bayou then contends that the *net* amount should be applied against the $103,893.60 pre-petition claim as a recoupment.[6] The basis for Bayou's contention is that the Gas Gathering Agreement contemplates a final "netting" of accounts and settling of amounts (Memorandum In Support filed by Bayou, p. 9) and that a bankruptcy estate takes its rights under a contract subject to the rights of recoupment. Bayou also pleads under equity insofar as under the Liquidating Trustee's analysis, Bayou would be in a worse position than it was as of the date of the filing of the involuntary petition because of the large imbalances post-petition. ["R & C wants the Court to allow it to . . . . penalize Bayou South for R & C's delay in rejecting the contract...". Memorandum in Support filed by Bayou, p. 10.] Bayou cites to *Holford v. Powers,* 896 F.2d 176 (5th Cir. 1990) for the proposition that a pre-petition damage claim may be used to reduce post-petition debt.[7] Also, Bayou reiterates that recoupment is the right of the creditor. Bayou reasons that since recoupment is the right of the Creditor, it has the right to determine which debt the recoupment will be applied against. They argue that that gives them the right to apply the recoupment amount against the prepetition debt under that theory and alternatively, under general Texas Law which would apply the recoupment amount to the oldest debt.

The Liquidating Trustee opines that the right of recoupment is impermissible in this case and only a right of setoff exists. The Liquidating Trustee takes a literal approach, arguing that although a right of recoupment existed previously under the Gas Gathering Agreement, the Agreed Order "specifically and contractually created a right of set off under its written terms in favor of R & C which was agreed to by Bayou South." Accordingly, the Liquidating Trustee concludes that only the right of set off remains, preempting the terms of the Gas Gathering Agreement and that such right was preserved solely to the benefit of R & C. Hence, the Liquidating Trustee believes that only the post-petition imbalance should be applied and that it should be applied solely to the Administrative claim pursuant to the express terms of the Agreed Order.[8] The Liquidating Trustee makes the point that had the parties intended to qualify the Agreed Order with respect to netting the pre- and post-petition imbalances or adjusting the pre-petition debt, they would have included the necessary language in the Agreed Order.[9]

---

5. The parties use different figures in their initial briefing, but the Court believes that the Stipulations control. *See United States Abatement Corp. v. Mobil Exploration and Producing (In re United States Abatement Corp.),* 79 F.3d 393, 400 (5th Cir.1996)

6. Under this analysis, the "dollar for dollar" administrative expense claim is protected and the uncertain, "pro-rata payment" is reduced.

7. Although *Holford* exemplifies the Fifth Circuit's application of the equitable doctrine of recoupment, it is distinguishable from the case at bar insofar as the issue in *Holford* was not quantification of a claim, rather it was violation of the automatic stay. More apropos is the case to which the *Holford* Court cited, *In re B & L Oil Co.,* 782 F.2d 155 (10th

Cir.1986) in which the Tenth Circuit found recoupment proper under similar facts to those in the present case.

8. Agreed Order entered August 31, 1995 at paragraph (3): "Bayou South's entitlement to receive payment on account of the Administrative Claim shall be subject to any right of set off that exists in favor of R & C arising from any gas imbalance credit that may be due R & C under a certain Gas Gathering Agreement dated as of November 1, 1992 and Amended as of November 1, 1993 . . .". The Agreed Order was apparently drafted by Bayou.

9. Although the order is an Agreed Order, the Court notes that it appears to have been drafted by Bayou and that in any dispute regard-

Thus, under the Liquidating Trustee's analysis, the administrative claim of $95,538.40 should be reduced by the amount of the R & C post-petition imbalance credit of $88,375.98 to $7,162.42.

## DISCUSSION

"A fundamental tenet of bankruptcy law is that a petition for bankruptcy operates as a "cleavage" in time. Once a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions. *See 4 Collier,* ¶ *553.15, at 553–69 to 70.* This is seen in bankruptcy restrictions on setoffs. "[The] recoupment doctrine has traditionally operated as an exception to the rule that applies to other debts." *In re B & L Oil, Co.,* 782 F.2d 155, 159 (10th Cir.1986). Any recoupment exception to this general principle perhaps should be narrowly construed. *Ibid.* at 158.

Recoupment is asserted for the purpose of reducing or extinguishing a debt arising from the same transaction. *Collier, Ibid.* Thus, the threshold question for the Court to consider is whether Bayou's pre-petition claim against R & C and the estate's post-petition claim against Bayou may be said to arise from the same transaction, otherwise recoupment will not apply. In bankruptcy, the distinction between recoupment and setoff is important. *In re Bram,* 179 B.R. 824, 826 (Bkrtcy. E.D.Tex.1995) citing to *In re B & L Oil Co.,* 782 F.2d 155, 157 (10th Cir.1986). A setoff is usually asserted for the purpose of reducing or extinguishing a mutual debt arising from different transactions. *Ibid.* citing to 11 U.S.C. § 553 and Collier on Bankruptcy, ¶ 553.03 (15th ed.1994). As stated above, setoff is allowed in only very narrow circumstances in bankruptcy and post-petition debt cannot be used to setoff pre-petition debt. 11 U.S.C. § 553.[10] In bankruptcy, the recoupment doctrine has

been applied primarily where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract. *Bram, Id. citing to In re B & L Oil,* 782 F.2d 155 and *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir. 1984). For example, "In a number of cases involving the bankruptcy of health-care providers, the courts have allowed insurers to recoup overpayments from amounts owed to the debtor post-petition, under a contract providing for such recoupment." *Bram, Id.* citing to *In re Monsour Medical Center,* 11 B.R. 1014 (W.D.Pa.1981), aff'g, 8 B.R. 606 (Bankr. W.D.Pa.1981); *In re Yonkers Hamilton Sanitarium,* 22 B.R. 427 (Bankr.S.D.N.Y. 1982); *In re Berger,* 16 B.R. 236 (Bankr. S.D.Fla.1981).

In the case of *In re Bram,* like the *Holford* case upon which Bayou relies, this Court was called upon to rule on the issue of whether the employee benefit plan administrator who suspended benefits to a Chapter 7 debtor until it recovered overpayments violated the automatic stay. To do so, the Court had to determine whether there was a right to setoff or a right to recoupment. In both *Bram* and the case before this Court, the underlying contracts involve a process of estimating in advance the amount of services to be used and later correcting the parties' accounts to resolve overpayments. In determining whether the employee benefit plan administrator in *Bram* was exercising a right to recoupment rather than setoff, this Court based its analysis on a basic premise in the treatment of executory contracts in bankruptcy: a debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of recoupment). *Bram, Id. at 826.* The United States Supreme Court in *Hurley v. Atchison, Topeka & Santa Fe Ry.,* 213

---

ing the meaning of an ambiguously drafted contract, one rule of construction is to interpret same against the drafter.

10. Setoff is subject to the automatic stay. 11 U.S.C. § 362(a)(7).

U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729 (1909) recognized that a trustee can only assume an executory contract by accepting the burdens of that contract as well as its benefits. *See also In re Pin Oaks Apartments,* 7 B.R. 364, 367 (Bkrtcy.S.D.Tex. 1980). The result of allowing a debtor or trustee to do so would be inequitable and create unjust enrichment post-petition at the creditor's expense. Accordingly, in *Bram,* this Court found the employment benefit administrator's right to recover overpayments was a recoupment and did not violate the automatic stay.

■ Like the Trustee in *In re Bram,* the Liquidating Trustee's analysis here would have the Court condone an unjust enrichment of the bankruptcy estate by allowing the Liquidating Trustee to reject an aspect of the Gas Gathering Agreement unfavorable to the estate while benefitting from the rest of that contract. This the Court will not do. Recoupment is an equitable doctrine. *United States Abatement,* 79 F.3d at 398. Here, there are no allegations that Bayou acted in bad faith or that Bayou clearly and unequivocally waived its right to recoupment or setoff. Neither has it been shown to this Court that the Liquidating Trustee detrimentally relied. Neither estoppel nor waiver is established. *In re Office Products of America, Inc.,* 140 B.R. 407, 410–11 (Bkrtcy.W.D.Tex.1992). This Court has reviewed the Agreed Order and the terms of the Gas Gathering Agreement and believes the Liquidating Trustee's argument that Bayou, by entering into the Agreed Order, somehow waived its recoupment right to be disingenuous: both documents clearly contemplate an adjustment of claims arising from mutual obligations upon termination of the term of the Gas Gathering Agreement. It is also clear that the Gas Gathering Agreement remained in effect after the entry of the Order for Relief. Thus, the right to recoupment under Article VI of the Gas Gathering Agreement did not ripen until termination of the Gas Gathering Agreement post-petition. Further, both the pre-petition credit and the post-petition debit arise from the same contract (a contract that was not rejected until confirmation, nearly a year after the entry of the order for relief), and should be considered to be a single transaction regardless of the "cleavage" of time brought about by the bankruptcy filing.[11] One thing that the Liquidating Trustee's argument fails to take into account is that there are two distinct calculations that must be made to resolve the present issue before the Court. The first calculation deals with the determination of the net imbalance in regard to the gas gathering contract. It is this determination that must be made in accordance with the general recoupment principles as applicable in the bankruptcy context. The agreed order does not deal with that calculation so the Court is left to the gas gathering contract and the general principles of law to make that determination. It is in this calculation that the doctrine of recoupment is applicable and necessitates a netting out of the prepetition and post-petition imbalances to arrive at "any gas imbalance credit that may be due R & C under a certain Gas Gathering Agreement dated November 1, 1992 ..." Therefore, this Court rejects the applicability of setoff proposed by the Liquidating Trustee in favor of the recoupment doctrine of Bayou. Accordingly, the Court nets the $88,375.98 post-petition R & C Imbalance Credit against the $34,-144.88 pre-petition R & C Imbalance Debit for a net R & C Imbalance Credit of $54,231.10. However, the Court cannot accept Bayou's position in it entirety because Bayou overlooks the "Law-of-the-case" doctrine.

---

**11.** See *Mercy Hosp. of Watertown v. N.Y. State Department of Social Services,* 171 B.R. 490, 496 (N.D.N.Y.1994) and *Westinghouse Electric Corp. v. Fidelity & Deposit Co.,* 63 B.R. 18, 21 (E.D.Pa.1986).

Having determined that recoupment rather than setoff applies in this matter, the Court must next determine whether to apply the R & C Imbalance Credit of $54,231.10 to the Administrative Claim, as the Liquidating Trustee proposes or to the pre-petition unsecured claim as Bayou suggests. The "law of the case" doctrine counsels that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994); *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Based on this general principle, Courts have developed specific rules about how earlier decisions affect later proceedings and cases. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C.Cir.1995). The law-of-the-case doctrine follows from the "sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Ref. & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950). *See U.S. v. Castillo*, 179 F.3d 321, 326 (5th Cir.Tex.1999). While some courts have held that the doctrine applies only to questions of law, others apply the doctrine in factual determinations. *Morris v. Garmon*, 291 Ark. 67, 722 S.W.2d 571, *cert. denied* 484 U.S. 816, 108 S.Ct. 69, 98 L.Ed.2d 33 (U.S.Ark. Oct 05, 1987). In the case at bar, the law of the case doctrine comes into play as a result of the Agreed Order becoming final and non-appealable. The Agreed Order limits Bayou's entitlement to receive payment on account of the Administrative Claim making it "subject to any right of set off that exists in favor R & C arising from any gas imbalance credit that may be due R & C under a certain Gas Gathering Agreement dated November 1, 1992, and amended as of November 1, 1993 ...". Contrary to the Trustee's position that the parties converted any recoupment right into a right of set-off by this language in the agreed judgment, this Court finds that the parties used the term right-of-set-off as a generic term rather than a term of art. It is clear from the context of the proceedings as well as the entirety of the agreed order that the parties used the term "right-of-set-off" to express the concept that the agreed upon administrative claim would be reduced by any amount of gas imbalance credit in favor of R & C. There is nothing in this agreement or the entire case to support the position that the parties made a deliberate choice to affect the method of determining the gas imbalance amount by referring to a "right-of-set-off." In fact, just the opposite is apparent in that the parties left that determination to future agreement between them and upon failure of that agreement, the Court. The Trustee's argument that this agreed order converts recoupment to set-off is astute lawyering but it is not supported by the remainder of the record nor is it equitable. Conversely, Bayou's argument that it controls the right of recoupment and therefore, can designate the debt against which it should be applied has to fail because of the terms of the agreed order. The agreed order clearly contemplates that whatever that imbalance credit turns out to be it must be applied against the post-petition administrative claim. Therefore, this Court may not apply the net R & C imbalance credit to the unsecured claim, but must apply it to the Administrative Claim as contemplated in the Agreed Order.

## CONCLUSION

In light of the foregoing, this Court finds that the pre-petition unsecured claim of Bayou South should be allowed in the amount of $103,893.60 as stipulated by and between the parties. This Court finds further that the Administrative Claim of Bayou South in the amount of $95,538.40, should be reduced by the amount of $54,231.10, being the amount of the R & C net imbalance credit, and allowed in the

amount of $41,307.30. An order will be entered accordingly.