**In re ENERGY CONTRACTORS, INC.
(EIN 72–0915477)**

**Bankruptcy No. 84–00427.**

United States Bankruptcy Court,
M.D. Louisiana.

April 12, 1985.

Whit M. Cook, II, Baton Rouge, La., for Energy Contractors.

Donald Richard, Opelousas, La., for creditors' committee.

Mark D. Sikes, Lafayette, La., for Energy Investments, Inc.

Raymond A. Beyt, Lafayette, La., for Tarpon Oil Co.

Robert L. Ellender, Lafayette, La., for Grace/Glasscock Drilling.

Tim Alexander, Lafayette, La., for Clayton G. Williams, Jr.

OPINION CONCERNING SUMS DUE FROM WELL OPERATORS TO DEBTOR: LIEN VALIDITY/SET-OFF/RECOUPMENT

WESLEY W. STEEN, Bankruptcy Judge.

### I. FACTS

During its active business life, the Debtor was in the oilfield service business; it prepared drilling sites for the erection of drilling equipment. Among other things, such work might consist of clearing the site of trees, brush, and debris; of leveling the site; of building roads to the site; *etc.*

To obtain this work, the Debtor submitted its prices to operators of the proposed wells. If the Debtor's bid was accepted, the Debtor then performed the work under the authority of an oral directive or work order from the well operator. Apparently there were no written contracts specifying the duties and rights of the parties.[1]

In the course of performing its contractual obligations, the Debtor purchased materials and employed subcontractors; the Debtor did not pay these creditors. Louisiana law, La.R.S. 9:4861, gives a privilege[2] to unpaid materialmen and subcontractors. The lien applies to the oil and gas produced from a well, to the proceeds of the well

---

**1.** No evidence of such documentation has been submitted to the Court, nor has any reference to any such documentation been made in the motions, memoranda, or oral argument.

**2.** "Privilege" is a civil law term sufficiently synonymous with "lien" so that the two will be used interchangeably in this opinion.

that inure to the working interest in the well, to the mineral lease, and to the drilling equipment. These privileges were perfected by the materialmen and subcontractors; the process involves recordation of the lien in the appropriate parish.

The parties have also stipulated the following facts:

(1) The Debtor did not pay the lien claimants;

(2) The lien claimants sold goods or performed work entitling them to be paid by the Debtor with respect to the wells involved and entitling them to liens under La.R.S. 9:4861;

(3) The liens are in the correct amount of the unpaid sum due by the Debtor to the lien claimants;

(4) If the Debtor had not filed a bankruptcy petition, the liens would be in all manner proper and correct;

(5) In the case of each motion presented, the balance due by the well operator to the Debtor under the contract is a sum in excess of the liens filed by the lien claimants;

(6) The period for filing liens has now expired, and all lien claimants are accounted for.

## II. ISSUE AND CONCLUSION

The well operators filed motions for relief from the stay to allow them to pay lien claimants and to offset or to recoup the payments against sums otherwise due to the Debtor.[3] The question is whether this bankruptcy proceeding somehow changes what would be the normal business practice whereby the well operator would pay the lien claimants, deduct the payments to

lien claimants from the sums otherwise due the Debtor, and thereafter pay only the remainder to the Debtor. This case holds that the bankruptcy filing has no effect under the circumstances here presented.

## III. REASONS

### A. Relationships Involved and Orders Previously Issued

It is clear that three sets of relationships are involved. First, there is the contract between the Debtor and the well operator under which the Debtor provided certain oil well site preparation services; the obligation of the well operator was to pay for those goods and services. Second, there is the contract between the Debtor and the lien claimants under which the lien claimants provided goods or services to the Debtor in connection with the well site preparation; the Debtor's obligation was to pay for those goods and services. Third, the lien claimants have a direct lien against property owned by the well operators by authority of the Louisiana lien statute.

The first and second relationships thus defined are apparently within the jurisdiction of this Court; further, those relationships appear to be within the core jurisdiction of the Court as that concept is determined under 28 U.S.C. § 157(b). However, while jurisdiction over the third relationship would appear to be a related proceeding under the expansive concept of bankruptcy court jurisdiction embodied in the Bankruptcy Code, the Court concluded at the hearing of these motions that it was inappropriate to exercise that jurisdiction under the circumstances of this case;[4] the

3. One of the well operators filed a slightly different proceeding; he deposited the contract proceeds into the registry of the Court and filed an interpleader against the lien claimants. For reasons assigned at the hearing, the Court allowed the well operator to withdraw the funds from the registry of the Court and converted the interpleader to a motion for relief from the stay in parallel with the other motions filed.

4. Such circumstances particularly relating to the fact that the well operators owed funds to the Debtor in excess of the liens filed against the

jobs and that this dispute essentially involved whether and how much the well operators should pay to the lien claimants and whether and how much the well operators should pay to the Debtor. It is also important to note that there is substantial doubt concerning the authority of the Bankruptcy Judge, in any event, to issue an order with respect to issues related to the "Third" set of relationships as defined in the text. While the relationship is apparently within the "related proceeding" jurisdiction granted federal courts under 28 U.S.C. § 1334(b), it does not appear to be a core juris-

Court abstained from doing so and declined to issue injunctions that would prohibit the lien claimants from enforcing their liens against the property against which they were entitled to proceed directly under Louisiana law. The Court further gave to the well operators relief from the § 362 automatic stay to pay the lien claimants while reserving the question of whether those well operators may offset or recoup the amount of payments to lien claimants against sums otherwise due the Debtor.[5] The Court took the latter issue under advisement and established a briefing deadline. This decision determines only that issue of the right to offset or to recoup.

### B. The Debtor's Position

The Debtor originally argued that any liens filed for record subsequent to the order for relief were invalid as they might affect the Debtor or property of the estate. Subsequently, however, the Debtor recon-

sidered and has informed the Court that the Debtor will not contest the well operators' right to offset or to recoup payments to lien creditors from sums otherwise contractually due to the Debtor.[6] Although the Debtor has indicated that it will not continue to contest the issue, it has not conceded the issue. The unsecured creditors' committee has vigorously protested the right of setoff or recoupment. While the unsecured creditors' committee might not have legal standing to raise the issue, the Court will consider the arguments in its memorandum since the Debtor raised the issue but has failed to support it.[7]

### C. Arguments Against Recoupment and Setoff

All parties apparently concede that any liens filed prior to the institution of this bankruptcy proceeding are enforceable and reduce the amount otherwise due to the Debtor.[8] Thus, we need consider only

---

diction issue that can be determined by the bankruptcy judge under 28 U.S.C. § 157(b). Any order by the Bankruptcy Judge would be questionable under the authority of *Northern Pipeline Construction Co. v. Marathon,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

**5.** This relief was granted out of an abundance of caution. The well operators were concerned about whether the relief from the stay was necessary prior to payments to lien claimants in order subsequently to assert a right to setoff or to recoupment. While not determining whether such advance relief is necessary, the Court saw no disadvantage in granting it, and, therefore, granted relief to the extent it may have been necessary for these purposes.

**6.** This decision, the Debtor informs the Court, was made after consultation with a secured creditor that allegedly holds an assignment of the receivables against which the recoupment or setoff would be made. The secured creditor apparently agrees that the setoff or recoupment is proper.

**7.** The Court does not here decide whether the unsecured creditors' committee would, in other circumstances, have standing to raise the issue. The circumstances of this case are relatively unusual. First, the Debtor first raised the issue but has now failed to support its position. The receivables in question are allegedly assigned to M Credit Corporation; the Court has ruled that assignment to be invalid but has stayed the

ruling pending appeal by M Credit; pending disposition of the appeal and subject to another court order, M Credit is collecting the receivables and holding the proceeds in escrow. In addition, the case has deteriorated from a Chapter 11 reorganization to a liquidating Chapter 11 case which is largely controlled by M Credit Corporation as the single largest interested party. Second, the unsecured creditors' committee has been substantially more active in the case than the Debtor; the Debtor expects virtually no recovery out of the case, and one would anticipate that unsecured creditors will receive a small dividend if, and only if, the Court is sustained in its invalidation of the assignment of accounts receivable. In other circumstances, the Court might be less prone to consider an argument posed by the unsecured creditors' committee supporting a position originally raised by the Debtor; in this case, in essence, the unsecured creditors' committee is presenting the Debtor's arguments on account of the Debtor being unwilling to do so for reasons of expense of litigation unlikely to be recovered.

**8.** Memorandum of unsecured creditors' committee: "There are two classes of liens filed in relation to this proceeding; those that were filed pre-petition, of which there are very few, and the remainder which were filed post-petition. It is clear that those claims which were secured by liens perfected prior to the filing of the petition are enforceable in this proceeding and may be set off (sic) as a result of the subrogation granted in § 509 of the Bankruptcy Act."

those liens that were recorded subsequent to the filing of this bankruptcy petition.

■ The unsecured creditors' committee recites that 11 U.S.C. § 545 allows the trustee (or debtor in possession) to avoid the fixing of a statutory lien on property of the debtor to the extent that the lien is not perfected or enforceable on the date of filing against a *bona fide* purchaser. The unsecured creditors' committee then argues that the liens filed after the order for relief herein are avoidable by the debtor in possession; in fact, all parties have concentrated their argument on whether the lien was properly perfected prior to filing and have discussed at length the perfection requirements. That concern is simply wide of the mark. Section 545 deals with liens against property of the debtor. No one is asserting a lien against property of the debtor; the liens were filed against the well operators and other interests. No one is asserting a lien against the receivable due from the well operator to the Debtor. The liens are asserted against other property of the well operator such as drilling rigs, machinery, *etc.* The question is not whether the lien claimant has a lien on the receivables; the question is whether the lien claimant has a lien against the well operator and whether the well operator can therefore reduce the amount due to the Debtor. Section 545 simply does not apply. While a lien not timely perfected may be avoidable under § 545 with respect to property of the debtor, there is no authority in § 545 for avoidance of a lien against property of third parties. Further, the § 362 stay does not prohibit collection efforts by lien claimants against well operators; the lien claimants are not debtors; no property of the estate is involved.[9]

The next question is whether the well operators have a right to reduce sums due to the Debtor under the contract by the amounts paid to lien claimants. The memorandum arguing against such a right asserts that there is no mutuality of obligation between the well operator and the Debtor; the memorandum argues that the mineral rights lien law establishes only an *in rem* action of the lienor against the property involved, and does not specify the obligation of indemnity necessary to establish a mutuality of obligation permitting a right of setoff under 11 U.S.C. § 553.[10] This analysis is, again, wide of the mark.

■ A review of the annotations to the Louisiana mineral lien statute does not reveal any cases squarely defining the rights and obligations between the well operator and a contractor when the well operator is required to pay lien claimants. It is inconceivable, however, that the well operator would not have the right to reduce sums otherwise due the contractor by the amount paid to lien claimants. This right arises under either of two legal theories.

First, the unsecured creditors' committee concedes that the well operator would be entitled to legal subrogation to the amount paid to lien claimants. This would then establish the mutuality of obligation necessary to setoff under § 553.

Second, the well operator's right would arise under the doctrine of recoupment.[11] When the Debtor undertook to provide contractual services to the well operator for a fixed fee (or fee computed under some other method), the bargain was that the Debtor would provide certain materials and services in exchange for a determinable sum of money. That obviously includes an obligation that the well operator would not have to pay the materialmen and subcontractors who provided some of the materials and services as well as paying the Debt-

---

9. This decision does not address the issue of whether the lien would be avoidable if § 545 applied.

10. An analagous statute, by contrast, is the Private Works Act, La.R.S. 9:4802(F), which provides that the contractor must indemnify the owner for claims resulting by lien claimants.

The unsecured creditors' committee argues that the Private Works Act establishes an express mutuality of obligation suitable to setoff, but that the mineral lien law does not.

11. See *Collier* ¶ 553[03].

or.[12] Accordingly, the well operator simply does not owe the Debtor for such sums as it is required properly to pay lien claimants.[13]

## IV. SUMMARY

In conclusion, the Court notes that this ruling applies to motions filed by Energy Investments, Inc., Tarpon Oil Company, Grace/Glascock Drilling, and Clayton G. Williams, Jr. With respect to these movants, the Court has already granted relief from the stay (if necessary) to allow these well operators to pay lien claimants, and the Court has reserved the question of their right to offset or to recoup these payments from the amounts otherwise due to the Debtor. The ruling today, by separate order, is that these movants may indeed reduce sums otherwise due to the Debtor by the amount of the liens properly paid in accordance with the stipulations of fact described above. The Court holds that to the extent of these lien payments, the movants are not indebted to the Debtor. The amount of the indebtedness from the movants to the Debtor is established as the remaining sums due under the contract less the payments to lien creditors.

A separate order will be entered.

12. Because there was no written contract, the Debtor's obligations are less easily demonstrated, but can be found to exist nonetheless. The Debtor obligated itself to perform certain services and to supply certain goods. The well operator agreed to pay money. The Court believes that it is evident that the parties intended for the Debtor to pay its vendors and subcontractors and thereby to keep the job lien free. That intent is evident by the performance of the parties under the contract; the Debtor actually paid most of its bills with respect to those jobs; it failed to pay only those bills that it could not pay on account of insolvency. The method in which the parties performed the contract demonstrates their intent: C.C. Art. 1956. Since that intent is evident, the Court need go no further. C.C. Art. 1963. If the common intent were not evident, the Court would look to usage: C.C. Arts. 1953 and 1964. In doing so, the Court reaches the same conclusion; contractors are normally expected to keep jobs lien free. [Note: All references are to Louisiana Civil Code Articles prior to amendment by Act 331 of the 1984 legislature; the effective date of that act was subsequent to the events relevant to this case.]

13. There is substantial argument in the memoranda concerning the obligation of the well operator to pay twice. It is a function of the circumstances of this case that the well operator is not required to pay twice. That is, the well operator may offset or recoup lien payments from sums still remaining due under the contract to the Debtor. It is conceivable that other circumstances might result in the well operator paying twice. For example, if the well operator had already paid to the contractor the full sum due, he might still be required to pay those sums again to the lien claimants because of the Louisiana statutory lien. Presumably, the well operator would then have a right to recover these sums from the contractor, most likely on the grounds of legal subrogation; if the contractor were insolvent, the well operator might simply be an unsecured creditor as is suggested in some of the memoranda. That latter situation is hypothetical and is simply not before the Court.