In re L & S OFFSHORE CATERERS, INC., Debtor.

TEMPLE DRILLING COMPANY, Plaintiff,

v.

L & S OFFSHORE CATERERS, INC., American International Grocery Company, Inc., the First Bank of Eunice, LaFleur Dairy Products, Inc., and Kelley and Abide Company, Inc., Defendants.

Bankruptcy No. 485–00052–LO–11.
Adv. No. 485–0035.

United States Bankruptcy Court, W.D. Louisiana.

Aug. 29, 1986.

Johnny Hutchison, William Logan, Lafayette, La., for L & S Offshore Caterers, Inc.

James D. McMichael, James E. Brown, New Orleans, La., for Temple Drilling Co.

James P. Doherty, Jr., Opelousas, La., for American Int. Grocery.

Aaron Frank McGee, Eunice, La., for First Bank of Eunice.

C.E. Bourg, II, Morgan City, La., for LaFleur Dairy.

Mary Ann Coffey, New Orleans, La., for Kelly & Abide.

RODNEY BERNARD, Jr., Bankruptcy Judge.

### Reasons for Judgment

This matter comes before the court on an interpleader complaint brought by Temple Drilling Company [Temple].

### Factual Background

Temple and the debtor herein, L & S Offshore Catering [L & S] had a longstanding contractual relationship whereby L & S provided catering services to Temple's offshore oil rigs. In January of 1985, L & S filed its petition in bankruptcy. Temple, who was not a creditor of L & S, did not receive formal notice of the bankruptcy at that time. Shortly after the filing, however, one of the defendants herein, American International Grocery, Inc. [AIG] made demand upon Temple for approximately $300,000.00 for supplies which it had provided to L & S, for services which L & S performed on Temple's rigs. Under Louisiana Revised Statutes 9:4861 *et seq.*, the owner of an offshore rig can be ultimately responsible for paying subcontractors who supply goods and services to that rig, even though there is no direct contractual relationship between the owner and the subcontractor. When that demand was made, Temple initiated this interpleader action seeking a determination of the various parties' rights to funds held by Temple, which had been invoiced by L & S.

In addition to L & S and AIG, made defendants herein are LaFleur Dairy Products, Inc. [LaFleur], Kelly and Abide Company, Inc. [K & A], both of whom also supplied goods to L & S for Temple rigs, and First Bank of Eunice [FBE], which needs an assignment of L & S's accounts receivable.

After institution of this suit, Temple deposited $247,746.56 in the registry of the court, and on October 1, 1985 deposited a further $112,077.64. Those sums represent the entire amount owed by Temple to L & S. By order of this court dated March 10, 1986, consented to by all the parties hereto, $182,449.55, plus interest, was disbursed to FBE. Those funds were post-petition funds, all parties agreeing that FBE had superior rights in those funds. This opin-

ion, therefore, deals with the remaining pre-petition funds.

### Findings and Conclusions

#### I.

■ First, the court will address some preliminary issues. Various allegations have been made about the timing of the deposits by Temple. L & S has claimed that Temple was dilatory in making those deposits, and claims that it is due interest and attorney fees as a result. This court finds that Temple was not dilatory in making the deposits. Temple acted reasonably and with all possible speed under the circumstances. Evidence at trial established that Temple was for some months unable to determine even an estimate of what was due to L & S, principally because of L & S's duplicate invoicing, mistaken invoicing, and the like. Further, evidence showed that L & S was given every opportunity to assist Temple in making that determination, but failed to do so, except to make claims far in excess of that actually owed. L & S cannot now be heard to complain about the timing of the deposits when its sloppy invoicing and refusal to cooperate caused the delay. L & S seeks essentially an equitable order, yet does not come to court with clean hands. In addition, the discussion below will show that L & S is not entitled to interest in any case. As to the requested attorney fees, there is no statutory or contractual provision which would allow the court to grant L & S attorney fees, as will be more fully discussed below.

■ Temple, on the other hand, is entitled to fees and costs of this action under both the contract and the law of interpleader. The contract clearly allows for such recovery from L & S. More importantly, under the law of interpleader, Temple is entitled to have its attorney's fees, costs and expenses deducted from the amount deposited in the registry of the court. L & S's failure to pay its subcontractors, a default beyond Temple's control, forced Temple to bring this action, incurring expenses and attorney fees. Temple's efforts in bringing this action, discovering other claimants, and coordinating and compiling pre-trial submissions have all inurred to the benefit of the other claimants. Temple is therefore entitled to a reasonable attorney fee and reimbursement for costs of this action, to be paid out of the fund deposited with the court, before any further distribution. *Corrigan Dispatch Co. v. Casa Guzman*, 696 F.2d 359 (5th Cir.1983); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 468 (5th Cir.1971), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); 3A Moore's *Federal Practice* ¶ 22.-16[2]. Finally, it has been asserted that at least one of FBE's mortgages constitutes a preference under the provisions of Section 547 of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*). In light of this court's decision, it is unnecessary to make that determination. In addition, that issue is not one which could be determined in this proceeding. One or more of the parties hereto, however, may wish to pursue that action in the future.

#### II.

Turning to the merits of this action, it may be helpful to briefly outline the positions taken by the various claimants.

L & S claims entitlement to the entire fund. L & S first claims that because there was no valid written contract between it and Temple, it is entitled to the fund despite its failure to pay subcontractors. L & S also claims under a lien, created by La.R.S. 9:4861, and filed shortly after this action was instituted.

First Bank of Eunice claims entitlement to that fund through various collateral chattel mortgages and pledges, all of which pledge L & S's accounts receivable to FBE to secure certain loans.

AIG, LaFleur, and K & A claim under various theories, but primarily through alleged liens pursuant to La.R.S. 9:4861 *et seq.* None of those three claimants actually filed a lien. They assert, however, that filing goes not to the validity of the lien, but only to its priority. Further, although the statute requires filing within 180 days, the suppliers also argue that that period was tolled, either by the bankruptcy, or by this proceeding. K & A claims $3,695.87. LaFleur claims $17,492.00. AIG has claimed in excess of $300,000.00, however, in its post-trial brief, AIG states that only $229,441.23 of the debt owed it by L & S is attributable to goods and services supplied to Temple rigs. The court therefore, finds that AIG's claim in this action is $229,-441.23.

Finally, various parties assert that L & S has no valid claim to the funds because of its default in paying its subcontractors. Similarly, it is argued that the funds are not "due" to L & S because of that default, and therefore are not yet "accounts receivable" to which FBE has a claim.

■ The court will deal first with the question of the existence of a valid contract between L & S and Temple. Although a series of nearly identical contracts had been in existence for some time, the last of these expired December 31, 1984, just days, or weeks before the events at issue here. The parties continued to deal together as if the contract were still in existence, and L & S continued to invoice Temple for services provided. Nor had the parties just overlooked the expiration of the written agreement. L & S and Temple were negotiating a new contract. The sticking point was apparently Temple's desire to more completely ensure that L & S paid its subcontractors, thereby ensuring that Temple would remain free of unlooked-for liability.

■ This court is convinced that there remained in effect an implied agreement to continue operating under the old contract, including *all* its terms. The parties' continued acceptance and operation, together with their negotiations, indicating that the agreement remained in effect. In addition, as a court of equity, this court finds that L & S is estopped to deny the existence of such a contract. L & S continued to operate under, and accept the benefits of, the expired written contract. It cannot now pick and choose the terms of that contract by which it would like to be bound. The written contracts had always contained a provision making L & S's right to payment contingent on L & S's payment of its subcontractors. L & S had also waived its right to claim a lien against Temple. By continuing to perform after the contract expired, L & S is estopped to deny the contract's existence as to only those two items.

■ Under the terms of the contract between L & S and Temple, the payment of L & S's invoices was expressly conditioned on L & S's production of evidence that its subcontractors had been paid. Further, L & S agreed to pay all its suppliers and subcontractors so that no lien could attach to Temple's property. Therefore, because of L & S's failure to comply with that agreement, no payments to L & S became due. Because no payments were due under the contract, L & S had no lien rights against Temple. Thus, the lien filed by L & S is void. For the same reason, FBE has no claim to the funds in question. FBE holds an assignment of accounts receivable. An assignment or security interest can only attach when the debtor has rights in the collateral. L & S had, and still has, no rights in these funds under the contract. FBE's interest, therefore, has not attached either.

The same result would be reached in this case even had this court not found a contract to be in existence. Under Louisiana law, an owner is entitled to withhold funds from his contractor until the contractor has provided satisfactory evidence of payment of all charges of subcontractors and suppliers. *See Hanchy v. Kildair,* 6 So.2d 203 (La.App. 1st Cir.1942); *See also Cutler-Hammer, Inc. v. Wayne,* 101 F.2d 823 (5th Cir.1939). By the same token, a contractor who has failed to pay his suppliers and subcontractors, exposing the owner to lien claims, has no lien rights himself. *See Hanchy supra,* and *Wayne, supra.*

■ As an aside, the court notes also the L & S contractually waived any lien rights against Temple. Such waivers are valid under Louisiana law. *Executive Office Centers, Inc. v. Cournoyer,* 433 So.2d 324 (La.App. 4th Cir.1983); *Houlemard v. Brierre,* 207 So.2d 185 (La.App. 4th Cir. 1968); *Babineaux v. Grisaffi,* 180 So.2d 888 (La.App.3d Cir.1965); *Toomer v. Price,* 168 La. 578, 122 So. 856 (1929). Thus, whether L & S contractually waived its lien rights, or never had those rights because of its failure to pay suppliers, it is abundantly clear that the lien filed by L & S is void.

■ Since, as set forth above, neither L & S nor FBE are entitled to the funds on deposit, the court must determine who is so entitled. Under the contract, Temple had the right to withhold payment until provided with assurances that subcontractors and suppliers had been paid. In the absence of such assurances, Temple presumably had the right to pay suppliers and subcontrac-

tors with the funds withheld. Further, under the concept of compensation, La.C.C. Art. 1893 *et seq.*, Temple had the right to set off funds held for L & S by any amount owed by L & S to Temple. L & S was liable to Temple both under the contract and as a matter of law for the amount of any liens claimed by L & S's subcontractors and suppliers. Thus, whether considered as a matter of contractual obligation, or one of law, Temple had the right to retain the funds in order to pay L & S's suppliers and subcontractors. Therefore, this court will order that the deposited funds, after reimbursement of reasonable fees and expenses to Temple, shall be paid to the suppliers herein, i.e., AIG, LaFleur, and K & A. Because none of the suppliers filed liens, which would determine their priority, they shall each be paid their pro rata share.

██ Temple has also requested that this court relieve it of all liability to these claimants, cancelling all liens filed against it, and enjoining any further liens. The judgment of this court will relieve Temple of any further liability to L & S. The parties agreed that the amount deposited in the registry of the court represented the entire invoiced debt. This court has also declared the lien filed by L & S to be void.

██ With regard to the other claimants, the situation becomes more complex. This court can adjudicate the issue of distribution of the funds deposited. The court, however, is not prepared to enjoin any further action by the three suppliers on this debt. This is not the type of interpleader in which the plaintiff's liability is limited to a sum certain. For example, an insurance company's liability is confined to the policy limits, although there may be claims in excess thereof. The insurance company is bound to pay only claims of a given amount. In that case, the judgment is final and the plaintiff has no further liability. In this case, Temple's potential liability was never finite. It could have been liable for the entire amount of all the supplier's and subcontractor's claims. This action determined only various rights in the sum held by Temple, which was owed to L & S. Temple cannot limit its liability under Louisiana statutes by saying, in effect, "here is $175,000.00 and that's all you get to share amongst you." On the other hand, this court is of the opinion that any rights of

these creditors to file liens have expired. Nothing prevented those creditors from filing their liens after this action was brought, as the debtor did. However, to the extent that AGI, K & A, and LaFleur have any rights against Temple for their deficiency, this court will not enjoin those rights. That matter is better left for decision in a court of appropriate jurisdiction.

### Conclusion

For the reasons stated above, and under the contract herein, under Louisiana law, the debtor here has no rights in the funds deposited by Temple. The lien filed by L & S is also void. For that reason, FBE, which has an assignment of the debtor's rights, likewise has no claim to these funds. Because Temple had the right, both under the contract and under Louisiana law, to withhold the amounts invoiced by L & S in order to pay L & S's sub-contractors and suppliers, this court orders that after payment of reasonable fees and expenses to Temple, the remaining claimant-suppliers share the fund pro rata.