79 F.3d 393
 In the Matter of UNITED STATES ABATEMENT CORPORATION, a/k/a
USA Corporation, Debtor.
UNITED STATES ABATEMENT CORPORATION, a/k/a USA Corporation,
Appellee Cross-Appellant,
Charles L. McCarty, Appellee,
v.
MOBIL EXPLORATION AND PRODUCING U.S., INC., as agent for
Mobil Oil Exploration & Producing Southeast, Co.,
and Mobil Oil Exploration and Producing
North America, Inc.,
Appellants Cross-Appellees.
 No. 95-30255.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 12, 1996.
 
 Richard William Martinez, Tranchina & Martinez, New Orleans, LA, for appellee cross-appellant.
 Michael Maurice Meunier, Sullivan, Stolier and Daigle, New Orleans, LA, for appellee.
 S. Gene Fendler, Philip K. Jones, Jr., Cheryl M. Kornick, New Orleans, LA, James D. McMichael, Shapiro, Lifschitz & Schram, Washington, DC, for Mobil Exploration & Producing U.S., Inc.
 Mary Elizabeth Arceneaux, Louisiana Bankers Association, Baton Rouge, LA, for amicus curiae.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before REYNALDO G. GARZA, WIENER and STEWART, Circuit Judges.
 PER CURIAM:
 
 
 1
 The principal issue presented by this bankruptcy appeal implicates the concept of recoupment. The specific question we must answer today is whether Appellants/Cross-Appellees Mobil Exploration and Producing, U.S., Inc. and Mobil Exploration and Producing North America, Inc. (collectively, Mobil) may recoup from a debt to Appellee/Cross-Appellant USA Abatement Corporation (USA) the dollar amount of all liens asserted against Mobil's property by USA's subcontractors and vendors whom USA failed to compensate. Concluding that Mobil is entitled to recoup its payments to the lien claimants, we reverse the holding of the district court and reinstate the holding of the bankruptcy court with respect to recoupment.
 
 
 2
 This appeal also involves challenges by both Mobil and USA to the bankruptcy court's calculation of the amount due to USA prior to recoupment. In its final judgment, the district court did not address the bankruptcy court's calculations, but we must. Agreeing with some of the bankruptcy court's calculations and disagreeing with others, we modify that portion of the court's judgment and affirm it as modified.
 
 I.
 FACTS
 
 3
 In June of 1990, USA contracted to sandblast and paint twelve of Mobil's platforms, which are located offshore of Louisiana in the Gulf of Mexico, on the Outer Continental Shelf. The parties entered into two contracts which were identical in their terms except with regard to the designation of the platforms involved. Each contract specified that Mobil could terminate the agreement with or without cause at any time, provided it compensated USA for work completed up to the time of termination (the Termination Clause).[1] The contracts also included a provision requiring USA to indemnify Mobil for payments of any liens or claims placed against Mobil's property by subcontractors or vendors (Indemnification Clause).[2] And the contract contained a retainage clause which authorized Mobil to withhold thirty percent of the money due to USA as retainage to ensure that USA would compensate in full all subcontractors or vendors who might assert lien rights against Mobil's property (Retainage Clause).[3]
 
 
 4
 In September of 1990, after USA had been paid the contract price less thirty percent retainage for six completed platforms, and had completed its work on an additional two platforms, Mobil exercised its right to terminate the contracts. Even though Mobil could terminate the agreements without cause, it asserted that USA had violated Mobil's safety provisions. Mobil and USA began negotiations to determine the proper payment due for the four uncompleted platforms.
 
 
 5
 Before the negotiations were completed, however, Mobil received notice that USA had not paid a number of its subcontractors and vendors, who as a result had lien rights against Mobil's property pursuant to the Louisiana Oil, Gas, and Water Well Lien Act.[4] Anxious to ensure that liens would not be placed on its property, Mobil offered to pay the subcontractors and vendors directly, so long as USA would agree to allow Mobil to deduct those payments from the amount ultimately determined to be owed to USA by Mobil. USA rejected any such arrangement and instructed Mobil not to deal directly with the subcontractors and vendors.
 
 II.
 PROCEEDINGS
 
 6
 As a result of this dispute, Mobil filed a complaint in federal district court in November of 1990, seeking inter alia a declaration that its contractual debt to USA should be reduced by the amount of any liens placed against Mobil's property by USA's unpaid subcontractors and vendors. Mobil named as defendants USA, the assignee of USA's accounts receivable (the Assignee),[5] and the unpaid subcontractors and vendors.
 
 
 7
 In March of 1992, before the issuance of a final judgment in the district court action, USA voluntarily filed a petition for protection under Chapter 11 of the Bankruptcy Code. The bankruptcy filing resulted in an automatic stay of all actions against USA, including the district court suit brought in 1990 by Mobil. After the imposition of the stay, the district court allowed Mobil's action to proceed only with regard to counterclaims brought against Mobil by the subcontractors and vendors, who were seeking an adjudication of their lien rights against Mobil's property. The district court ultimately issued judgments enforcing the lien rights of the subcontractors and vendors.
 
 
 8
 Meanwhile, in the bankruptcy court proceedings, USA filed a Complaint to Compel Turnover of Property against Mobil, requesting that the bankruptcy court order Mobil to relinquish to the bankruptcy estate the full amount allegedly due to USA under the contracts. In response, Mobil filed a Proof of Claim for all amounts that it had previously paid and would be obligated to pay to the lien claimants. USA filed inter alia an objection to the proof of claim; and the Assignee filed a complaint seeking to intervene in the matter.
 
 A. BANKRUPTCY COURT'S OPINION
 
 9
 In November of 1993, the bankruptcy court issued an opinion specifying the net amount that Mobil would be required to pay the bankruptcy estate. The court first found that Mobil owes USA a total of $692,099.00 on the contracts in question, then found that Mobil had paid $508,430.52 to the lien claimants and that additional liens totaling $98,621.50 continued to encumber Mobil's property. Concluding that Mobil had bargained with USA for a "lien free job," and emphasizing that the contract contained an Indemnity Clause protecting Mobil from lien claimants, the bankruptcy court held that Mobil could recoup $607,052.02, the total of the lien claims previously paid and still outstanding. The bankruptcy court ordered Mobil to pay the Assignee $85,046.18, the net amount due after recoupment.
 
 B. DISTRICT COURT'S OPINION
 
 10
 USA and the Assignee appealed the decision of the bankruptcy court to the district court, challenging both the calculation of the amount due under the contract without considering recoupment and the applicability of recoupment. Mobil cross-appealed, contesting the bankruptcy court's calculation of the amount it owed USA before recoupment. On appeal, the district court reversed the decision of the bankruptcy court, holding that Mobil was not entitled to recoupment for two reasons: (1) Mobil's claim against USA and USA's claim against Mobil did not arise out of the same transaction, and (2) Mobil had made no overpayment to USA.[6] The district court also reasoned that allowing recoupment by Mobil would upset the Bankruptcy Code's system of priorities for the payment of creditors. Accordingly, the district court required Mobil to pay the bankrupt estate the full contract price with no deduction for payments to the lien claimants. The district court did not consider Mobil's cross-appeal or USA's and the Assignee's complaints regarding the bankruptcy court's alleged miscalculation of the amounts owed USA before recoupment.
 
 
 11
 Mobil timely appealed from the judgment of the district court. USA and the Assignee cross-appealed, challenging the district court's failure to alter the bankruptcy court's calculation of the pre-recoupment amount owed on the contract.
 
 III.
 ANALYSIS
 A. STANDARD OF REVIEW
 
 12
 Pursuant to the bankruptcy appellate process, we are the second level of appellate review. Nonetheless, we perform the identical task as the district court,[7] reviewing the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo.[8] Although we benefit from the district court's analysis of the issue before us, " '[t]he amount of persuasive weight, if any, to be accorded the district court's conclusion ... is entirely subject to our discretion.' "[9]
 
 B. THE MERITS
 1. Recoupment
 
 13
 The primary issue on appeal is whether Mobil is entitled to recoup the amount of its payments to the lien claimants by withholding it from the sum owed to USA. Recoupment originated as an equitable rule of joinder that allowed adjudication in one suit of two claims that would otherwise have to be brought separately under the common law forms of action.[10] In the bankruptcy context, the doctrine of recoupment has "evolved to permit a creditor to offset a claim that arises from the same transaction as the debtor's claim."[11] Recoupment "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim."[12] The doctrine operates "as an exception to the rule that all unsecured creditors of a bankrupt stand on equal footing for satisfaction [and] ... sometimes allows particular creditors preference over others."[13]
 
 
 14
 The justification for the recoupment doctrine is that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor...."[14] We have held that the trustee of a bankruptcy estate "takes the property subject to the rights of recoupment."[15] In other words, to the extent that a party is entitled to recoupment of funds, "the debtor has no interest in the funds."[16]
 
 
 15
 In the instant case, the district court clearly erred in finding that Mobil's claim against USA did not arise from the same transaction as USA's claim against Mobil. The record refutes that finding and mandates the opposite conclusion. USA asserts that, under the contract, Mobil owes it money for its sandblasting and painting of Mobil's platforms; Mobil asserts that, under the contract, USA must reimburse it for any lien payments that arise from USA's failure to compensate the subcontractors and vendors who aided USA in its sandblasting and painting of those platforms. The terms of the contract between USA and Mobil not only govern Mobil's payments to USA, but also impose clear obligations on USA to keep Mobil's property lien free. The Indemnity Clause of the contract provides that USA will "indemnify and hold [Mobil] harmless against the payment of any and all ... liens ... against its property ... growing out of or incident to [USA's] operation hereunder."[17] Moreover, the Retainage Clause authorizes Mobil to withhold thirty percent of the money due to USA as leverage to ensure that USA would compensate in full all subcontractors or vendors who might assert lien rights against Mobil's property.[18] These contractual clauses proclaim a "normal expectation" that contractors will "keep jobs lien free."[19] Thus, Mobil's claims against USA for reimbursement of lien payments arise from the same transaction under which USA seeks payment from Mobil. At least three prior cases have directly addressed the question whether an owner in Mobil's position is entitled to withhold payments from a contractor when unpaid subcontractors assert lien rights against the owner's property pursuant to Louisiana law.[20] In each case, the court concluded that the owner has the right to retain the amount of the liens from the sums it owes the contractor.[21]
 
 
 16
 We agree. Recoupment is "an equitable doctrine designed to determine a just liability on [a] claim"[22]; and under the circumstances presented by this appeal, equity dictates that Mobil pay USA only the contract price less the amounts it has paid or will have to pay to remove the liens placed on its property by USA's unpaid subcontractors and vendors. The only reason that Mobil is burdened by the lien payments is USA's failure to meet its obligation to keep Mobil's property free of liens. It is only just and equitable that Mobil be allowed to recoup the amount of the lien payments from the amount it owes USA.
 
 
 17
 2. The Amount Owed to USA Prior to Recoupment
 
 
 18
 On appeal to us, both parties dispute the bankruptcy court's calculation of the gross amount owed to USA on the contract, i.e. the amount earned without considering recoupment. The parties stipulated to the price for the platforms that were completed prior to termination; the only issue in contention is the amount due for the four uncompleted platforms.
 
 
 19
 a. Mobil's Claims
 
 
 20
 Mobil challenges the bankruptcy court's calculations of the following amounts owed on the uncompleted platforms: (1) direct costs; (2) indirect, general, and administrative costs; and (3) projected profits. Mobil argues first that the bankruptcy court erred by adding $3,867 to the amount of direct costs to which the parties had stipulated in the pretrial order. The bankruptcy court added that amount after noting a discrepancy between the sum stipulated to by the parties and a calculation in one of USA's exhibits.
 
 
 21
 We have stated that "[i]t is well settled that stipulations of fact fairly entered into are controlling and conclusive and courts are bound to enforce them."[23] Accordingly, we hold that the bankruptcy court erred by adding the $3,867 and thereby altering the stipulation of the parties.
 
 
 22
 Mobil next argues that the bankruptcy court should not have included indirect, general, and administrative costs in its calculation of the amounts owed to USA on the uncompleted platforms. The relevant portion of the Termination Clause provides that
 
 
 23
 [USA] shall receive as full compensation that portion of the lump sum amount due for the work performed up to the date of termination, which shall equal the amount which [USA] can demonstrate to [Mobil] [USA] has spent in the ordinary course of business for the work performed to the date of termination.
 
 
 24
 Mobil urges that indirect, general, and administrative costs are not amounts USA "has spent" for "work performed."
 
 
 25
 The bankruptcy court held that the Termination Clause could be interpreted either as requiring direct costs only or as requiring direct and indirect costs. The court also found that the intent of the parties with regard to the meaning of the clause could not be determined. Accordingly, the bankruptcy court "construed [the] ambiguous claus[e] against the preparer" of the contract, Mobil.
 
 
 26
 We agree that the Termination Clause is ambiguous. It could be read either to exclude or include indirect, general, and administrative costs. Moreover, the bankruptcy court's finding with respect to the intent of the parties on this issue is not clearly erroneous. Under Louisiana law, ambiguous clauses are construed against the drafter of the contract,[24] so we affirm the bankruptcy court's inclusion of indirect, general, and administrative costs in the amount owed to USA.
 
 
 27
 Mobil's final challenge contests the bankruptcy court's inclusion of a 1.5% profit for USA in calculating the amount due to USA on the uncompleted platforms. Mobil insists that USA is not entitled to profit on the uncompleted platforms, as profit is not "spent" in the ordinary course of business. The bankruptcy court rejected this argument; and, citing evidence in the record establishing that offshore contractors' typical profit margins are 1.5%, found that USA is entitled to a profit of 1.5% on the uncompleted structures. Given the ambiguity of the contract on this issue and the fact that Mobil drafted the contract, we find no error by the bankruptcy court in including a 1.5% profit margin when calculating the post-termination amounts owed by Mobil.
 
 
 28
 b. USA's Claim
 
 
 29
 Predictably, USA does not object to the inclusion of profit in the calculation of the amount it is owed; it argues instead that the bankruptcy court should have used a profit margin of 20%, not 1.5%. The bankruptcy court found that USA adduced no evidentiary basis for concluding that 20% was a realistic margin. This finding is supported by the record, and is not clearly erroneous.
 
 IV.
 CONCLUSION
 
 30
 For the foregoing reasons, we reverse the district court's holding that Mobil is not entitled to recoupment of the payments made and to be made to the lien claimants from the amount owed to USA, and reinstate the holding of the bankruptcy court that recoupment does apply here. We reverse the bankruptcy court's finding that the direct costs incurred by USA on the uncompleted platforms at the time of the termination of the contract were $3,867.00 more than the amount stipulated to by the parties. We affirm all other findings and holdings of the bankruptcy court regarding the amount due to USA before recoupment.
 
 
 31
 Finally, we remand this case to the district court with instructions to remand it to the bankruptcy court for proceedings consistent with this opinion.
 
 
 32
 REVERSED and REMANDED, with instructions.
 
 
 
 [1]
 The termination clause provides in relevant part:
 [Mobil] reserves the right to terminate this contract with or without cause at any time. Contractor shall receive as full compensation that portion of the lump sum amount due for the work performed up to the date of termination, which shall equal the amount which Contractor can demonstrate to [Mobil] Contractor has spent in the ordinary course of business for the work performed to the date of termination. Contractor shall allow [Mobil] to review sufficient records, accounts, receipts, invoices and other documents so that [Mobil] can satisfy itself that the amount claimed to be due to Contractor is reasonable.
 
 
 [2]
 The indemnification clause provides in relevant part:
 Contractor further agrees to pay [Mobil] for damages to its property and to indemnify and hold [Mobil] harmless against the payment of any and all taxes, penalties, interest, liens or indebtedness or claims against its property, or for work performed, or measured by the work performed, growing out of or incident to Contractor's operations hereunder.
 
 
 [3]
 The retainage clause provides in relevant part:
 Contractor shall bill [Mobil] on a structure by structure basis.... [Mobil] shall retain 30% of all invoices paid by structure until Contractor provides releases of all claims and liens executed by such subcontractors and material suppliers who have provided labor and/or materials for that structure in an aggregate value of $5,000.00 or more, and for which such release(s) of all claims and liens has not been previously supplied for that work described herein.
 
 
 [4]
 See LA.REV.STAT.ANN. § 9:4861 et seq. (West 1991 & Supp.1995)
 
 
 [5]
 At the time, the assignee of USA's accounts receivable was Delta Bank and Trust Company. Charles T. McCarty was later substituted for Delta Bank and Trust
 
 
 [6]
 As discussed infra at note 11, the district court cited no authority substantiating its assertion that a party must establish that it has made an "overpayment" before it is entitled to recoupment
 
 
 [7]
 See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enter., Ltd. III, 994 F.2d 1160, 1163 (5th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993)
 
 
 [8]
 Id
 
 
 [9]
 Id. (quoting In re Sublett, 895 F.2d 1381, 1384 n. 5 (11th Cir.1990))
 USA argues that this case comprises a "non-core" bankruptcy proceeding. In non-core proceedings, we review both the bankruptcy court's findings of fact and its conclusions of law de novo. See, e.g., Walker v. Cadle Co., 51 F.3d 562, 569-70 (5th Cir.1995).
 We reject USA's characterization of the proceeding below as "non-core." Recognizing that the filing of a proof of claim "invokes the special rules of bankruptcy," we have held that "a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy." Wood v. Wood, 825 F.2d 90, 97 (5th Cir.1987). In the instant case, Mobil filed a valid proof of claim pursuant to the bankruptcy rules; and the matter was conducted pursuant to the bankruptcy rules guiding adversary actions. See NORTON BANKRUPTCY RULES PAMPHLET 1993-94 EDITION, 182, 212. Accordingly, this matter is sufficiently ensconced in the bankruptcy context to render it a core proceeding; and we review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo.
 
 
 [10]
 See Ashland Petroleum Co. v. Appel, 782 F.2d 155, 157 (10th Cir.1986)
 
 
 [11]
 Bustamante v. Johnson, 934 F.2d 662, 667 (5th Cir.1991) (internal quotations omitted). The district court concluded that, to be entitled to recoupment, Mobil needed to establish not only that the claims involved arose out of a single transaction, but also that it has made overpayments to USA. The court cited no authority that substantiates this "overpayment requirement," and we have found none
 
 
 [12]
 Holford v. Powers, 896 F.2d 176 (5th Cir.1990) (internal quotations omitted) (citing COLLIER ON BANKRUPTCY p 553.03); see also Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir.1984)
 
 
 [13]
 Ashland Petroleum Co. v. Appel, 782 F.2d 155, 157 (10th Cir.1986) (citing Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir.1984)). USA strenuously argues that by allowing recoupment, the bankruptcy court upset the priority scheme set forth by the Bankruptcy Code for redistribution of the bankruptcy estate. This contention overlooks the fact that the doctrine of recoupment provides an exception to standard rules governing that priority scheme. See id. at 159 ("[T]he recoupment doctrine has traditionally operated as an exception to the rule that applies to other debts."); see also Fiero Prod., Inc. v. Conoco, Inc., 102 B.R. 581 (Bankr.W.D.Tex.1989) ("[R]ecoupment ... is an exception to the rule that no creditor of a bankrupt shall receive preferential treatment.") (emphasis added)
 
 
 [14]
 Lee, 739 F.2d at 875 (emphasis added)
 
 
 [15]
 Holford, 896 F.2d at 179 (internal quotations omitted)
 
 
 [16]
 Id
 The doctrine of recoupment is similar to but distinct from the legal and equitable principle of "setoff," which is recognized at 11 U.S.C. § 553. A setoff is asserted for the purpose of reducing or extinguishing a creditor's claim against the debtor when "the mutual debt and claim contemplated are generally those arising from different transactions.... Recoupment, on the other hand, is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." 4 COLLIER ON BANKRUPTCY p 553.03. Setoff is allowed in only very narrow circumstances in bankruptcy; and a "creditor properly invoking the recoupment doctrine can receive preferred treatment even though setoff would not be permitted." Ashland, 782 F.2d at 157. For a detailed discussion of the doctrine of setoff, see COLLIER, supra, p 553.
 
 
 [17]
 USA argues that (2) Mobil breached the contract by failing to pay USA after terminating the contract, and (2) Mobil therefore may not rely on the terms of the contract. This argument is without merit. After terminating the contract, Mobil learned of USA's debts to the subcontractors and vendors. Mobil then offered to pay the subcontractors and vendors itself, so long as USA agreed to deduct that amount from the contract price due to USA. USA rejected this overture. The ensuing delays resulted from Mobil's efforts to establish legally the respective rights of the parties to payment. Mobil acted properly; and its behavior does not amount to breach of contract
 
 
 [18]
 The retainage clause provides in relevant part:
 Contractor shall bill [Mobil] on a structure by structure basis.... [Mobil] shall retain 30% of all invoices paid by structure until Contractor provides releases of all claims and liens executed by such subcontractors and material suppliers who have provided labor and/or materials for that structure in an aggregate value of $5,000.00 or more, and for which such release(s) of all claims and liens has not been previously supplied for that work described herein.
 
 
 [19]
 In re Energy Contractors, Inc., 49 B.R. 139, 143 n. 12 (Bankr.M.D.La.1985)
 
 
 [20]
 See Tackaberry v. Freeport McMoran Oil and Gas Co., 802 F.Supp. 1438 (E.D.La.1992); Temple Drilling Co. v. L & S Offshore Caterers, Inc., 67 B.R. 25 (Bankr.W.D.La.1986); In re Energy Contractors, Inc., 49 B.R. 139
 
 
 [21]
 Tackaberry, 802 F.Supp. at 1439-40 (relying heavily on the holdings of Temple Drilling and In re Energy Contractors and holding that an oil and gas company was entitled to withhold from the contract price due to its contractor the amount of a lien placed against the company's property by unpaid subcontractors); Temple Drilling, 67 B.R. at 29 (noting that "[u]nder Louisiana law, an owner is entitled to withhold funds from his contractor until the contractor has provided satisfactory evidence of payment of all charges of subcontractors and suppliers," and holding that the debtor contractor had no right to the funds that the owner was to pay the subcontractors; In re Energy Contractors, 49 B.R. at 140 (allowing recoupment on the theory that bankruptcy proceedings have no effect on the "normal business practice whereby the well operator would pay the lien claimants, deduct the payments to lien claimants from the sums otherwise due the Debtor, and thereafter pay only the remainder to the Debtor"))
 
 
 [22]
 Holford, 896 F.2d at 179
 
 
 [23]
 See United States v. Blackburn, 610 F.2d 253, 266 n. 15 (5th Cir.1980), vacated without discussion of relevant issue, 639 F.2d 1115 (5th Cir.1981) (en banc) (reversing prior panel decision by relying on different stipulated facts and eliciting criticism of dissent for apparent disregard of alternate set of stipulated facts); A. Duda & Sons Coop. Ass'n v. United States, 504 F.2d 970, 975 (5th Cir.1974)
 
 
 [24]
 See Carter v. Fin. Advisor & Consultant, Inc., 444 So.2d 646, 649 (La.App. 1st Cir.1983), writ denied, 446 So.2d 313 (La.1984)