**Revised November 15, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-20941
_____

In The Matter of GASMARK LTD.,

Debtor

_____

BRENDA HEROD,

Appellant,

VERSUS

SOUTHWEST GAS CORPORATION,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
November 1, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The Chapter 11 bankruptcy trustee ("Trustee") for Gasmark Ltd. ("Gasmark") appeals the district court's judgment allowing Southwest Gas Corporation ("Southwest") to reduce its indebtedness to Gasmark by more than $500,000. More particularly, the Trustee challenges the bankruptcy court's acceptance of Southwest's recoupment claim for liquidated damages that Southwest asserted was owed because Gasmark failed to

deliver gas due under the contract.[1]  The bankruptcy court concluded that even though Gasmark delivered no gas to Southwest, which supported Southwest's recoupment, under the contract, Gasmark's contractual opportunity to sell gas to Southwest was the type of benefit that supported Southwest's right to recoup liquidated damages for Gasmark's breach.  The bankruptcy court then allowed Southwest to reduce its indebtedness to Gasmark for the purchase price of gas Gasmark delivered pre-petition by the liquidated damages due Southwest.  We disagree with this conclusion reached by both the bankruptcy court and the district court and reverse.

## I.

Southwest and Gasmark entered into a natural gas supply contract for the period of November 1992 to March 1993.  Pursuant to the terms of the contract, Southwest had the right to buy anywhere from a minimum of 15,000 MMBtu per day up to a maximum of 30,000 MMBtu per day.  The contract provided that Southwest was entitled to liquidated damages if Gasmark failed to deliver the amount of gas nominated by Southwest.  In addition, the contract provided that if Southwest failed to nominate the minimum of 15,000 MMBtu per day, Gasmark was entitled to damages.

---

[1]The Trustee also argues that Southwest was a creditor of Gasmark and was therefore bound by the terms of the plan.  According to Gasmark, the terms of the plan prohibit Southwest from recouping its damage claims.  Because we hold for other reasons that the district court and bankruptcy court erred in allowing Southwest to recoup we do not decide whether the terms of the plan barred Southwest's recoupment.

2

On or about February 19, 1993, Gasmark informed Southwest that Gasmark was insolvent, was not going to perform for the remainder of the contract, and might file a bankruptcy petition. From February 19, 1993, to February 24, 1993, Southwest placed daily nominations of 18,000 MMBtu. On February 25, 1993, Southwest increased its nominations to 30,000 MMBtu per day for the remainder of February as well as for the entire month of March 1993. The contract expired by its terms on March 31, 1993. Gasmark failed to provide any of the gas Southwest nominated from February 25, 1993, through the contract's expiration on March 31, 1993. On March 4, 1993, Gasmark filed a Chapter 11 petition for reorganization under the Bankruptcy Code. Southwest received notice of the bankruptcy on March 23, 1993.

Southwest owed Gasmark $769,648.69 for gas Southwest received before the filing of the bankruptcy petition. On April 1, 1993, Southwest delivered a gas settlement statement to Gasmark that reflected a reduction in this indebtedness by $39,708.04 for nondeliveries in February 1993, and by $464,983.00 for nondeliveries in March 1993. Following these reductions, calculated according to the contract's damage provisions for nondelivery, Southwest paid Gasmark the resulting balance of $265,270.54. Because it recouped its damage claim for non-delivery, Southwest did not file a claim for damages in the bankruptcy action.

3

The bankruptcy court held that Southwest was entitled to reduce its debt to Gasmark because of Gasmark's non-deliveries. The court reasoned that Southwest's reduction of the debt was a recoupment not a setoff, and the recoupment was appropriate because Gasmark's estate received benefits from the executory contract. The district court affirmed this judgment. The Trustee appeals.

## II.

We review the bankruptcy and district courts' findings of fact for clear error and their legal conclusions de novo. Traina v. Whitney National Bank, 109 F.3d 244, 246 (5th Cir. 1997).

## A.

We first consider whether the bankruptcy court correctly permitted Southwest to recoup post-petition claims arising under the executory contract against indebtedness Southwest owed Gasmark for pre-petition gas deliveries.

The bankruptcy court held that pursuant to the executory contract, Southwest was entitled to liquidated damages of $39,708.04 for nondeliveries in February 1993, and $464,983.00 for nondeliveries in March 1993. The bulk of Southwest's liquidated damages claim for the month of March 1993, was based on Gasmark's failure to perform the executory contract after

4

March 4, 1993, when it filed its Chapter 11 petition.

The bankruptcy court agreed that the post-petition executory contract between Gasmark and Southwest was enforceable by Gasmark but unenforceable by Southwest. The bankruptcy court then quoted from the Supreme Court's decision in Bildisco:

> If the debtor in possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor in possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.

NLRB v. Bildisco and Bildisco, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984). Applying Bildisco, the bankruptcy court concluded that because Gasmark received a benefit from Southwest, Southwest was entitled to invoke the doctrine of recoupment and deduct its liquidated damages from the amount it owed Gasmark.

We have no quarrel with the general legal principles set forth by the bankruptcy court and the district court as summarized above. The flaw in the bankruptcy court's reasoning, however, is in applying those general principals to the record evidence in this case. Our review of the record fails to reveal any basis upon which the bankruptcy court could find that Gasmark enjoyed a concrete benefit from Southwest's continued nominations of gas under the contract. As the above quote from Bildisco-- upon which the bankruptcy court relied--plainly states, Gasmark's

5

only obligation to Southwest was to compensate Southwest for any benefit Gasmark received from Southwest's continued performance under the contract. No evidence was presented that Gasmark derived any economic benefit from Southwest's continued nominations of gas. No evidence was presented that the debtor's unexercised option to sell gas had any value. Because we are persuaded that the bankruptcy court and the district court erred in concluding that Gasmark enjoyed a benefit from Southwest's continued nominations of gas under the contract, it follows that those courts erred in permitting Southwest to recoup the post-petition liquidated damages provided for under the contract.

## B.

We next consider Southwest's recoupment claim for its liquidated damages suffered pre-petition.

Before Gasmark filed its petition, Southwest was entitled to enforce Gasmark's obligations under the contract and assert a claim against Gasmark for breach of contract. However, Southwest attempted to recoup its damages and did not file a proof of claim in Gasmark's bankruptcy. The Bankruptcy Code does not mention or define the term "recoupment," yet recoupment is an equitable doctrine that has long applied in the bankruptcy context. See In re U.S. Abatement Corp., 79 F.3d 393, 398 (5th Cir. 1996). In Abatement we stated that recoupment "allows a defendant to reduce

6

the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." Id. at 398 (citations omitted). But as the above quote indicates, the fact that identical parties are engaged in transactions of a similar subject matter may not be enough to permit recoupment. The obligations must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations. 5 COLLIER ON BANKRUPTCY ¶ 553.10[1] (Lawrence P. King ed., 15th ed. rev. 1999).

Reduced to its essence, recoupment is "an equitable doctrine designed to determine a just liability on the plaintiff's claim." Abatement, at 398 (quoting In re Holford, 896 F.2d 176, 179 (5th Cir. 1990)). The classic recoupment right occurs when a buyer erroneously overpays a seller for goods or services. Courts allow the buyer to recoup its overpayment by reducing the purchase price to the extent of the overpayment. "[E]ven though an overpayment is not a required element for recoupment, the doctrine is often applied to prevent a windfall to the debtor in the overpayment context." 5 COLLIER ON BANKRUPTCY ¶ 553.10[1].

Our review of this record finds no inequities accruing to Southwest that are in any way comparable to the buyer who has overpaid the seller. In the absence of injury to Southwest or

benefit or enrichment to Gasmark, we feel no equitable tug in Southwest's favor that supports application of the narrow doctrine of recoupment.  Because Southwest did not file a proof of claim in Gasmark's bankruptcy and Gasmark's plan has been confirmed, Southwest no longer has a claim for pre-petition damages.

For the above reasons, the judgment of the district court is REVERSED and the case is REMANDED to the district court for entry of judgment consistent with this opinion.